[No. 2,501.]

# IN THE MATTER OF THE ESTATE OF BEZER SIMMONS, DECEASED.

APPOINTMENT OF ATTORNEY FOR HEIRS NOT REPRESENTED.—In proceedings to obtain an order for the sale of real estate belonging to the estate of a deceased person, it is the duty of the Probate Court to appoint an attorney for heirs not represented; and an attorney's fee of fifty dollars for such services is not unusual or excessive.

EMPLOYMENT OF ATTORNEY TO PROCURE LETTERS OF ADMINISTRATION.— The employment of an attorney for the mere purpose of procuring letters of administration is a contract made in advance of any authority on the part of the client to deal with the assets of the estate in anywise; and whether the application be successful or not the estate is not to be charged with the fees of the attorney for the applicant.

EMPLOYMENT OF COUNSEL BY ADMINISTRATOR.—The administrator, after he has become such, has the right, and it is ordinarily his duty, to employ competent counsel to aid him in the management of adversary suits, in which the estate may be involved while under his care, and fees for such services may be allowed from the assets of the estate.

ADMINISTRATOR'S COMMISSIONS.—As affording a basis for the allowance of an administrator's commissions, the value of the estate which has been taken into possession, and having been in possession, has been accounted for, is alone to be regarded.

IDEM.—The Probate Court should not allow an administrator fees or commissions for property which does not come into his hands, but which is in the possession of other parties, who claim title to it adversely to the estate, even though it is appraised and included in the inventory.

IDEM.—If expenses are incurred in attempting to administer, the administrator should be allowed them, so far as they are necessary.

APPEAL from the Probate Court of the City and County of San Francisco.

The facts are stated in the opinion.

*B. S. Brooks,* for Appellant.

*Bartlett & Pratt,* for Respondent.

By the Court, WALLACE, C. J.:

Orrin Simmons, administrator *de bonis non,* brings this appeal from an order of the Probate Court of the City and County of San Francisco, allowing the final account of Adolphus Hollub, his immediate predecessor in the administration.

It appears that in 1850 the decedent departed this life intestate, and that in November of that year Frederick Billings, his brother-in-law, took out letters of administration upon the estate. In April, 1853, he presented his petition to the Probate Court, setting forth that no estate of any description had ever reached his hands, or was likely to do so; and upon his application in May following he was discharged by the Court from his trust.

In 1860 Hollub, then Public Administrator, presented his petition to the Probate Court, in which petition he substantially set forth these proceedings of Billings, and alleged that the decedent had left valuable real estate, which had not been theretofore administered upon; and upon his application he was appointed administrator *de bonis non* in February, 1861. In May following Hollub filed an inventory and appraisement of the property of the estate, in which it appeared that the decedent died seized of certain real estate, situate in Sacramento City, of the appraised value of one thousand six hundred and eighty dollars.

In September, 1861, a claim against the estate for some fifteen thousand dollars was allowed; and in April, 1869;

Hollub filed another inventory and appraisement of the Sacramento property, in which a more detailed description of the lots was set forth, and their aggregate value, with a good title, stated to be upwards of forty-four thousand dollars.

It was at the same time reported to the Court, however, by Hollub, that the title of the estate to the property was in dispute, that its possession was then held adversely to the estate, and that neither he nor the former administrator had ever been in its possession, and that the appraisement of forty-four thousand six hundred and fifty dollars represented "the present cash value of the property with a good title." Subsequently, on the 30th day of April, 1869, Hollub presented his petition in the usual form, praying an order of sale of the Sacramento property to pay the claim he had allowed and expenses of administration. The petition, in addition to the allegations usual in such cases, also set forth that the title of the estate to the property was still in dispute, and the property itself in the possession of parties holding adversely, and that possession, if it could be obtained at all, could only be obtained after expensive and protracted litigation, and that the estate had no funds with which to carry on such litigation, nor if it had would such litigation be advisable.

It was also alleged in the petition, that the estate is largely insolvent, and that its creditors unanimously favored the sale of whatever interest it might have in the property.

A notice of this application for an order of sale having been published, the appellant, Orrin Simmons, a brother and heir at law of the deceased, thereupon appeared and presented a petition, in which he prayed that the letters of Hollub might be revoked and letters of administration issued to himself, and after a hearing an order to that effect was

entered by the Court in November, 1869; the petition of Hollub, for an order of sale, being at the same time dismissed. The order by which the letters of Hollub were revoked, directed the newly appointed administrator to pay to the retiring administrator what might be due him for his services and expenses, and for proper compensation of his counsel and attorney, the amounts to be thereafter ascertained and allowed by the Probate Judge.

The final account of Hollub was thereupon filed, setting forth the several items which he claimed should be allowed him, and among them the following:

" Paid H. J. Labatt, attorney's fees, obtaining letters of administration, fifty dollars."

The account also stated, that Hollub had incurred the following liabilities in the administration, to wit:

" Bartlett & Pratt, attorneys' fees, seven hundred dollars; Theodore Hittell, attorney for absent heirs, services in Probate Court on application to sell real estate, fifty dollars;" and that Hollub had himself performed services reasonably worth the sum of one thousand five hundred dollars.

These services of Hollub are referred to in the account as being those set forth in the written response filed by him in resisting the application of the appellant Simmons for letters of administration. They are in substance, that being informed in 1860 of the claim the estate held to the lands in Sacramento City, and that the parties then in adverse possession of the property would pay something for that claim, he, at the instance of creditors of the estate, applied for letters of administration thereon; that he caused an inventory of the property to be prepared and filed, and the title to be searched, and obtained the services of counsel in its investigation, with a view to the institution of legal proceedings for its recovery, if deemed advisable; that about this time the flood in Sacramento City depressed the market value of the property, and the proceedings concerning it were

therefore temporarily suspended; that in April, 1869, the prices of real estate in Sacramento having in the meantime materially advanced, he caused another inventory to be made out and filed, and he thereupon employed and retained other counsel to recover the property or procure a sale of the interest of the estate therein, etc.

The correctness of each of the several items which we have enumerated was contested by the appellant, but upon the hearing his objections were in all respects overruled, except that the compensation of Hollub was reduced from the sum of one thousand five hundred dollars, claimed by him, to one thousand three hundred and thirty-nine dollars and fifty cents, "*that* sum (in the language of the order) being three per cent upon forty-four thousand six hundred and fifty dollars, *the appraised value of the said estate.*"

First—The allowance of a fee of fifty dollars for the services of the attorney of the absent heirs, appointed by the Court to represent them in the proceedings to obtain an order for the sale of the real estate, is attacked here as being "unfounded and excessive." It can hardly be said to be unfounded, for the statute has in such case made it the duty of the Court to appoint an attorney for heirs not represented (Sec. 159); nor does the amount allowed in this instance seem unusual or excessive in anywise. The evidence as to the services rendered by the attorney is not found in the record here—and we must presume, in support of the order of the Court below, that the case presented there justified the allowance—we could hardly be expected to hold that the allowance of fifty dollars amounts to error *per se.*

Second—But the compensation allowed to an attorney for services in obtaining letters of administration for Hollub cannot be supported. The statutes regulating the settlement of estates of deceased persons, provides for the employment of attorneys in the Probate Court, at the expense of the estate, in certain enumerated instances only, and in

those instances it will be found that the attorneys do not represent the administrator—they are appointed by the Court, and their general duties are not to aid the administrator but rather to resist his proceedings in so far as such proceedings may appear to be hurtful to the interests of the estate, or nor warranted by the rules of law.

But the employment of an attorney, for the mere purpose of procuring letters of administration, is a contract made in advance of any authority on the part of the client to deal with the assets of the estate in anywise. His application may not be successful, and in that case it would hardly be pretended that the estate is to be bound for the attorney's fees. Where a bona fide contest as to the right to administer has arisen and been determined, in which the employment of counsel was necessary, it may be in the discretion of the Court to allow the necessary expenses of all the parties concerned, including a reasonable counsel fee; but this has no reference to the mere ordinary proceedings to obtain letters of administration, in which no such circumstances appear, and, whether the application be successful or not, the estate is not to be charged with the fees of the attorney for the applicant.

Third—Of course the administrator, after he has become such, does not undertake to personally conduct, without the aid of counsel, the management of adversary suits in which the estate may become involved while under his care. He has a right, and it is ordinarily his duty, to employ counsel competent for that purpose. He does not undertake, in accepting letters of administration, that he is possessed of a sufficient degree of learning in the principles and practice of the law to enable him to personally manage a lawsuit in Court. The allowance of a fee to counsel rendering services in such a case is, therefore, not objectionable in itself, and we cannot, upon principles already adverted to, undertake to say that the amount allowed to Bartlett & Pratt for their

professional services was excessive; for, though witnesses appear to have testified before the Probate Court, the record here is silent as to the proof adduced in support of the claim of Bartlett & Pratt.

Fourth—The Court below determined that Hollub was entitled to compensation, and adopted the second appraisement of the property of the estate as a basis by which to arrive at the amount of that compensation. The statute fixes the compensation of an administrator at a named percentage upon the value of the estate administered upon. It does not follow, however, in any case, that the appraisement on file is necessarily to constitute the basis upon which the compensation is to be allowed. The inventory is required to set forth all the estate which shall have come to the *knowledge* as well as that which shall have come to the possession of the administrator. (Sec. 105.) But he is to be charged in his account with only such portion of the estate as may come to his *possession* at the value of the appraisement. (Sec. 216.) This is for the purpose of fixing the measure of his accountability in the event it be afterwards lost through his fault. The inventory may or may not afford a basis of calculation for the purpose of allowance of commissions upon property taken into possession and accounted for; but if resorted to in making such allowance, it cannot in any case amount to more than prima facie evidence of value, and the value should be left open to inquiry, if the inventoried value be not satisfactory to all parties concerned.

It has been seen that the order of the Court fixed the compensation of the administration "*at three per cent upon the appraised value of the estate, ascertained in the last inventory and appraisement on file*," etc. But this last inventory and appraisement did not show, nor purport to show, the value of the estate. No one pretends that it did. The appraisers certified the cash value of each of the lots, it is true, but

Hollub, in his report indorsed on the appraisement, certifies in substance that the appraisement shows the value of the property with a good title, and the allegations contained in his petition for an order of sale show that the title of the estate was not considered to be good or sufficient. It is there set forth that while it is certain that expensive and protracted litigation must ensue if the title be asserted by suit, it is not certain that possession could even then be had. But commissions were allowed to Hollub, as though he had received into his possession and accounted for an estate of the value of forty-four thousand six hundred and fifty dollars, and this in the face of the fact that nothing whatever had been received, and of course nothing actually accounted for as assets of the estate. Alarming results might follow if an administrator were to be allowed a percentage upon the actual cash value of what might turn out to be the property of other persons, and which had never been in his possession or in that of the intestate, merely because he, as administrator, had chosen to assert a claim to such property in behalf of the estate and had caused it to be returned in an inventory, or, as here, in a supplemental inventory. The entire available assets of an estate might be conveniently absorbed in paying the percentage upon the cash value of property held only by this imaginary title—a title resting in the mere assertion of the administrator himself.

The commissions to be allowed to an administrator are fixed by the statute. (Sec. 221.) They are a designated percentage "*upon the amount of the whole estate accounted for by him.*" We are of opinion that an administrator cannot be said to have "accounted for" an estate, in the sense of the statute, unless he shall first have taken it into possession. He is charged by the statute, as we have already seen, with the value of "the whole of the estate of the deceased which may come into his possession," etc. (Sec. 216); and it is made his duty to "take into his possession all the estate of

the deceased, real and personal.'' (Sec. 194.) When he shall have taken the property into possession and accounted for it, he is entitled to compensation by way of commissions upon its value. Unless he take it into possession, he is not charged in his account with its value. He may, and doubtless would, incur a responsibility, should he fail to take it into possession when he lawfully might, if by such failure it should become ultimately lost to those entitled to its benefits; but as affording a basis for the allowance of commissions, the value of the estate which has been taken into possession, and having been in possession has been accounted for, is alone regarded. Whether the failure to obtain possession be his fault or misfortune, is not material. Unless this view be the correct view, then there is no reason why the administrator might not receive a percentage upon debts claimed to be due the estate, but never collected or realized. Such a claim might be as well supported as the one allowed below, resting, as it does, upon an alleged title to real estate which has not only not been successfully asserted, but seems to have been of such an unreliable character that the counsel employed by the administrator themselves had little or no confidence in it, and therefore '' determined against bringing any suits to recover the property.'' We are of opinion that there was error in awarding compensation to Hollub upon the basis of percentage upon the supplemental inventory and appraisement.

It appears that, in his attempt to administer, Hollub has incurred some expenses. These, of course, must be allowed him (Sec. 219), so far as they were, or fairly seemed to be, necessary.

The order of the Probate Court, in so far as it allows the fee of Labatt, and the claim of Hollub for commission, is reversed. In all other respects it is affirmed, and the cause

is remanded for further proceedings not inconsistent with this opinion.

Neither Mr. Justice CROCKETT nor Mr. Justice BELCHER expressed an opinion.