[L. A. No. 269.   Department One.—January 14, 1898.]

In the Matter of the Estate of JOAQUIN FERNANDEZ, Appellant. COMMERCIAL BANK OF SAN LUIS OBISPO, Appellant, v. M. F. BURKE, Administrator, Respondent.

ESTATES OF DECEASED PERSONS—PAYMENT OF CLAIMS WITHOUT ORDER OF COURT —INSOLVENCY OF ESTATE—SETTLEMENT OF ANNUAL ACCOUNTS—APPEALABLE ORDER—CONCLUSIVENESS UPON UNPAID CREDITORS—FINAL ACCOUNT. Though it is the proper practice for the administrator to obtain an order for the payment of general creditors, and without such order payments are made at his peril; yet where the payment of such claims is credited in his annual accounts, and such accounts are allowed and settled by the court, the order allowing them is not void, but is an appealable order, which, however ill-allowed or erroneous, becomes conclusive upon unpaid creditors who do not appeal therefrom; and the fact that an apparently solvent estate appears to be insolvent, upon settlement of the final account of the administrator, cannot authorize an attack by an unpaid creditor upon the items of payments to creditors allowed in the previous annual accounts of the administrator.

ID.—FAMILY ALLOWANCE—ORDER PRIOR TO INVENTORY—ALLOWANCE OF PAYMENTS AFTER INVENTORY.—Payments made on account of family allowance after the filing of the inventory, without further or other order of the court than that made for such payments until the filing of the inventory, or until further order of the court, which were settled and allowed in the annual accounts, without appeal therefrom, can-

not be objected to upon settlement of the final account because of the final insolvency of the estate; and a payment made by the administrator thereon after the last settlement of an annual account, in good faith, at a time when the estate was not known to be insolvent, and when the family was without other means of support, may be properly allowed by the court in the settlement of the final account.

ID.—COMMISSIONS OF ADMINISTRATOR—REAL ESTATE SOLD UNDER DEED OF TRUST.—The commissions of the administrator are to be allowed upon the amount of the estate accounted for by him; but the valuation in the inventory is not conclusive evidence of such amount, and where real estate, inventoried at much more than the amount of a deed of trust, was sold under the deed of trust, the administrator cannot be allowed commissions upon its appraised value in the inventory, or upon any greater amount than the sum for which the property was actually sold.

ID.—CARRYING ON OF BUSINESS—CARE OF ANIMALS—ALLOWANCE OF EXPENSE. The expense of the proper caring by the administrator of sheep, lambs, cattle, hogs, horses, and colts, until they were sold, is not such carrying on of the business of the decedent as will make the administrator liable for loss and expense to the estate incurred on account thereof; but it was the duty of the administrator to care for them until they could be advantageously sold; and where the court found that the administrator managed the estate in a businesslike manner, and used every necessary and prudent measure to protect it, he was properly allowed in his final account the expenses incurred in the care of such animals, notwithstanding the final insolvency of the estate.

APPEAL from an order of the Superior Court of Santa Barbara County settling the final account of an administrator. W. B. Cope, Judge.

The facts are stated in the opinion of the court.

Paul R. Wright, and W. I. Day, for Appellant.

Thomas McNulta, and Grant Jackson, for Respondent.

THE COURT.—The Commercial Bank of San Luis Obispo, a creditor of the estate of said decedent, filed exceptions to the final account of M. F. Burke, the administrator of said estate, and its exceptions having been disallowed, and the said account having been settled and approved, said bank appeals.

The inventory of said estate was filed May 22, 1893, showing the assets to be of the value of $59,986.50, and the total of the claims proved and allowed was $36,526.52, showing a balance

over indebtedness of $23,459.98. The claim of appellant amounted to $19,821, and was unsecured. The only other large claim was that of the San Francisco Savings Union, for $15,643.-33, which was secured by a deed of trust. The aggregate of all the other claims—nine in number—was $1,052.19.

The administrator filed his first annual account June 12, 1894, and his second annual account May 11, 1895, the third account being the final one, to which appellant excepted. Said first and second annual accounts were each, after due notice and hearing, approved and allowed by the court by orders duly made. No exceptions were filed or objections made to either of said accounts.

In said first annual account the payments of all said smaller audited claims were reported paid in full. The only payment to appellant was made October 14, 1895, and reported in the final account, viz., $2,500.

The final account, as filed, contained the item, "Cash, administrator's commissions, $841.97," and showed a balance in his hands of $753.69. On the hearing of the final account, the court increased said commissions to $1,920, and allowed attorneys' fees in the sum of $400, and found the estate indebted to the administrator in the sum of $799.34, and ordered that upon filing vouchers for said attorneys' fees he, and the sureties on his bond, should be discharged. The estate, therefore, proved to be insolvent, all of appellant's claim except the sum of $2,500 being unpaid.

1. Appellant's first point is, that the payment of general debts, proved and allowed, amounting to $857.19, was illegal, having been made without any order of the court, and that the order of the court allowing and approving said first annual account was "void" as to those items.

This contention is based by appellant upon section 1646 of the Code of Civil Procedure, which, after providing for the payment of funeral expenses and expenses of last sickness, provides: "He may retain in his hands the necessary expenses of administration, but he is not obliged to pay any other debt or any legacy until, as prescribed in this article, the payment has been ordered by the court."

It is undoubtedly the proper practice to obtain an order for

the payment of general creditors, and without such order payments are made at the peril of the administrator. If exceptions had been filed to the first account, and it appeared then that the sufficiency of the assets for the payment of all the debts was doubtful, it would have been the duty of the court to have stricken them out, with leave to charge them in a future account if the estate should prove solvent, or to the extent of their *pro rata* share if the estate should prove insolvent; but certainly it cannot be said that the action of the court in approving these payments and allowing them as a credit to the administrator was "void," for to say that such action of the court is void is to say that the court has no power to allow a payment not based upon a previous order to pay it, even though the estate could pay all its debts were they many times larger.

Unless the order approving the account must be held absolutely void, appellant is concluded thereby, whether the order was erroneous or not. It was an appealable order. (Code Civ. Proc., sec. 963, subd. 3.)

The settlement of said annual accounts not having been appealed from is conclusive. (Code Civ. Proc., sec. 1637; *Estate of Stott*, 52 Cal. 403; *In re Couts*, 87 Cal. 480; 100 Cal. 404; *Washington v. Black*, 83 Cal. 294.)

The question before us did not arise in *Estate of Dunne*, 65 Cal. 378, cited by appellant. That was a petition for a partial distribution. In the opinion, after saying that the executor or administrator shall be allowed credits for funeral expenses, etc., though no previous order had been made directing the payment, it was further said: "But that he shall not have authority to pay, nor be allowed at any accounting, any other debt or legacy unless the court has expressly ordered the same to be paid."

No authority is cited for that dictum, nor has it been cited or followed in any subsequent case; but in *Miller v. Lux*, 100 Cal. 615, where large sums of money had been paid to the widow, and intended as a family allowance, but without being authorized by an order of the court, it was said that such payments were made at the peril of the executors, "and, to the extent that they were not approved by the subsequent order of the court, constituted a wrongful use of the money of the estate." And in the opinion rendered upon petition for rehearing it was said:

"If the court upon the new hearing find $1,000 per month, or any greater or less amount, a reasonable sum to be applied for the support of the widow, then the executors should be credited with the amount so found to be reasonable and proper." We think this authority fully supports the conclusion that, though these debts were paid without any order or direction of the court, the court had power to allow them as credits upon the settlement of the annual account, and though ill-advised or erroneous, no appeal having been taken from the order approving that account, appellant is concluded thereby.

2. Before the inventory was filed the court made an order directing the administrator to pay to the widow $100 per month, for family support, until the inventory should be filed or until the further order of the court. This allowance was paid for twenty months, amounting to $2,000. No other than the original order was made directing its payment. Appellant excepted to all of said payments except the first, contending that $1,900 was paid without authority.

Fourteen hundred dollars of the $2,000 was included in the first annual account, $500 in the second, and $100 in the final account, the last payment having been made June 1, 1895, less than a month after the filing of the second annual account, and before it was approved.

So far as the exceptions to these payments is based upon the absence of a prior order of the court directing them, they must be held not well taken, upon the authority of *Miller v. Lux, supra;* and as to all, except the last payment of $100, they were settled and allowed in the annual accounts, to which no exceptions were taken, and which were not appealed from, and cannot now be reviewed. It is said, however, that the final account shows the estate to be insolvent. Conceding that, it could only affect the last payment, which was made June 1, 1895; and it does not appear that at that date there was reason to suppose the estate would prove to be insolvent. The administrator testified that he supposed the order for the payment of the family allowance continued, and was so advised by counsel; that the family was without the means of subsistence, and that at all times during which these payments were made the estate was solvent. There was no cross-examination of the witness, nor was

any evidence offered by appellant other than the annual accounts.

It is further urged against the allowance of said payments for family support that a homestead and certain personal property were set off to the widow. That fact appears only in the administrator's report attached to his final account; but of what the homestead and personal property consisted, or when set off, does not appear. The exception to said payment cannot be sustained.

3. It is contended that the commissions allowed the administrator greatly exceed those allowed by law.

In his final account the administrator credited himself with the sum of $841.97, as commissions. Upon the hearing the commissions were increased by the court to $1,920, and this increase is excepted to. It is stated in appellant's brief that the $841.97 commissions, appearing in the account as filed, were computed upon the amount of money received and accounted for, not including the value of the real estate; and it is assumed by counsel on both sides that the additional allowance was based upon the real estate. The administrator is entitled to commissions "upon the amount of the estate accounted for by him." (Code Civ. Proc., sec. 1618.) For the purpose of ascertaining the amount of the estate, the inventory and appraisement may be looked at, but, as was said in *Estate of Simmons*, 43 Cal. 549: "It does not follow, however, in any case that the appraisement on file is necessarily to constitute the basis upon which the compensation is to be allowed"; and in *Estate of Hinckley*, 58 Cal. 516, it was said: "The valuation of the inventory is evidently not intended to be conclusive for any purpose." The administrator is chargeable in his account with the whole estate of the decedent which may come into his possession, "at the value of the appraisement contained in the inventory" (Code Civ. Proc., sec. 1613); but, if any is sold for less than the appraisement, he is not responsible for the loss, if the sale has been advantageously made. (Code Civ. Proc., sec. 1614.) "The inventory may or may not afford a basis of calculation for the purpose of allowance of commissions upon property taken into possession and accounted for; but, if resorted to in making such allowance, it cannot in any case amount to more than *prima facie* evidence of value, and the value should be left open to inquiry, if the inven-

toried value be not satisfactory to all parties concerned." (*Estate of Simmons, supra.*) If the administrator takes possession of the estate, and it is distributed to the heirs, it is thereby "accounted for" by him, and, if no objection is made by them to the valuation in the inventory, that would form the basis of estimating his commissions. If the administrator sells the estate, or a portion of it, the amount received upon such sale becomes the evidence of its value to the estate, for which he has to account, and upon which his commissions are to be estimated.

In the present case, it does not appear from the record that the administrator made any disposition of the real estate for which the commissions were allowed, but it is assumed in the briefs that it was sold under the power contained in the deed of trust, made by the decedent for the amount of the indebtedness to the San Francisco Savings Union for which the property was held in trust, and that that was the full value of the property at the time of the sale. If the administrator had sold the property under an order of court for the purpose of paying this debt of the decedent, he would have been entitled to commissions only upon the amount for which it was sold, and he cannot be entitled to any greater sum by reason of its having been sold by the trustees without any intervention on his part. The real estate with the improvements was appraised at the value of $37,020, and the claim of the San Francisco Savings Union, which is secured thereby, was approved for the sum of $15,643.33; but the record does not show the amount for which the real estate was sold in satisfaction of this claim, and we, therefore, are unable to direct a correction of the decree.

4. It is further urged that the administrator had no right to carry on the business at a loss, and should make good to the estate all such loss as was incurred.

There is in the record no evidence that he carried on the business of the intestate in any sense other than that he cared for the personal property until it could be advantageously sold. There were nearly 9,000 head of sheep and lambs, 140 head of cattle, 186 hogs, and 33 horses and colts. These were cared for until they were sold, as it was the duty of the administrator to do; and the court found and stated in its order that the administra-

tor had managed the estate in a good and business-like manner, and used every necessary and prudent measure to protect it.

The superior court is directed to modify its order allowing commissions to the administrator in accordance with the views herein expressed, and, so modified, the orders appealed from will stand affirmed.