## In re COURSEN'S ESTATE.

## S. F. No. 2004; July 27, 1901.

### 65 Pac. 965.

**Estate of Decedent—Distribution.—Under Code of Civil Procedure,** section 1665, providing that on the final settlement of the accounts of ·the executor, or at any subsequent time, the court may proceed to distribute the residue of the estate, the court has not jurisdiction to decree distribution of the estate on a petition filed after the final account was filed, but before it was settled; nor is such decree authorized by section 1663, which relates only to partial distribution.

**Estate of Decedent—Distribution.—Where Testatrix Devised to Her Son** all her interest in the estate owned by his father, her first husband, and the remainder of her property to her second husband and his children, a final decree distributing certain specific property to the latter "and any other property not now known or discovered which may belong to said estate, or in which it may be interested," is erroneous, since such provision might carry any after-discovered property belonging to her first husband.

**Estate of Decedent—Distribution.—A Legatee is not Prejudiced** because property in which he has no interest is improperly distributed by the final decree.

**Estate of Decedent—Distribution.—An Executor cannot Appeal** from a final decree on the ground that the property is improperly distributed.

**Executor—Allowance of Account Without Vouchers.—Where an** executor, in his final account, stated that all the money of deceased went into the hands of his coexecutor, and was used in settlement of the estate, and all the legatees interested stipulate that the account of the latter is correct, it is not error to allow the latter's account without vouchers.[1]

**Executor—Account—Payment of Taxes.—Where the Evidence** warrants a finding that an executor did not pay certain taxes charged in his account, and for which he produced receipts, the order disallowing such charges should not be reversed.

**Executor—Compensation.—Where, During the Settlement of** an estate, the property was occupied by the family, including the

[1] Cited in Rice v. Tilton, 14 Wyo: 118, 82 Pac. 581, where the court takes occasion to remark upon the absence of a statute in Wyoming dispensing with vouchers in similar cases.

executor, he should not be allowed extra compensation for his services in excess of his commissions.

**Executor.**—In Fixing the Commissions of an Executor, the inventory value of the property is not conclusive, but the actual market value may be shown, and used as the basis.

**Executor—Commissions.**—Where a Small Sum of Money left by testatrix was received and used by appellant's coexecutor for the benefit of the estate, it was not error to exclude such sum from the computation in fixing appellant's commissions.

**Executor—Commissions.**—Where an Executor Acts also as Attorney for the estate, such services do not necessarily entitle him to extra compensation.[2]

**Estate of Decedent—Distribution—Payment of Taxes.**—Political Code, section 3752, providing that decree of distribution of an estate shall not be made until the taxes are paid, is to protect the revenues of the state, and has no application where the tax has in fact been paid, though the one who made the payment has a tax title to the property therefor.

APPEAL from Superior Court, City and County of San Francisco; J. V. Coffey, Judge.

Appeal by William P. Stout from a decree allowing the account of G. A. Coursen as an executor of the will of Jeanie A. Coursen, deceased, and disallowing the account of appellant as coexecutor, and from a decree of distribution of her estate. Decree settling accounts affirmed, and decree distributing the estate reversed.

G. Gunzendorfer for appellant; Martin Stevens for respondents.

CHIPMAN, C.—Jeanie A. Coursen died testate in 1877, naming William P. Stout and G. A. Coursen as executors, and her will was shortly after duly probated, and letters issued to the executors. An inventory was filed and notice to creditors published. No claims have been presented

---

[2] Cited in the note in 1 Cof. Pro. Dec. 550, on the right of an administrator, who is an attorney, to charge the estate with the expense of another attorney.

Cited in the note in 2 Cof. Pro. Dec. 369, on the apportionment of commissions when there are two or more administrators.

against the estate. The property consisted of $180 in money and certain real property on Fulton street, in San Francisco, which was occupied by the family of deceased. Respondent Coursen was the second husband of deceased, and appellant, Stout, was her son by her first husband. She left seven children of the second marriage, all of whom had reached majority before the final accounts and the petition for distribution were filed. It appeared by executor Coursen's final account that he received all the money, and he testified that he disbursed it in expenses of administration; but he filed no vouchers. By the will of deceased, appellant was left all the interest she had in the estate of her deceased first husband, Jacob W. Stout, father of appellant. To her children by the second marriage, of whom there were seven, the testatrix devised her real estate, being her separate property, share and share alike. There was a provision of the will that the land should remain a residence for her sons and daughters until the youngest of them should become of age, and "until that time should not be sold, encumbered, mortgaged or otherwise disposed of"; and when that period arrived the land was to be divided among the children equally, or sold, and the proceeds thus divided, "as the majority of my said sons and daughters may then elect." It was also provided that, if any of her sons or daughters should die without lawful issue, his or her portion should go to such of her children as may survive. She requested that the real property described in the will should remain as a home and place of residence for her husband until the time for its disposition should arrive. Two of the seven children died in the city of San Francisco after attaining their majority, and pending administration, namely, Grant, a son, and Geraldine, a daughter; and there was evidence that they were never married. On October 29, 1898, the five surviving children and the coexecutor, Coursen, filed their petition asking that the administration be brought to a close, and for distribution of the estate remaining in the hands of the executors to the five surviving children. Executor Coursen filed his first and final account and accompanying report September 28, 1898, and executor Stout filed his first and final account and report on October 7, 1898. On October 19, 1898, executor Coursen and the five

children filed their objections to the account of executor Stout, and on November 15, 1898, the latter filed objections to the allowance of his coexecutor's account. Thereafter, and on November 15, 1898, the separate final accounts came on to be heard, the hearing was continued to November 18th, and, after being partly heard, the hearing was again continued to December 1, 1898, when executor Stout filed a demurrer to the petition for distribution on the ground that it did not state sufficient facts, and at the same time he filed objections and exceptions by way of answer to the petition for distribution on various grounds. One ground was that there had been no administration of the estates of the two deceased children, and that the court cannot now determine the proportions of the assets of the estate to be distributed to the heirs thereof. Another ground was that his coexecutor, Coursen, had suffered a tax title to become a lien on the premises. Most of the allegations of the petition were specifically denied. The hearing of the accounts was had on December 1, 1898, testimony taken, and evidence, documentary and other, heard, and "the matter of said accounts was submitted to the court for consideration and decision; and thereafter, on the thirtieth day of December, 1898, the said court rendered and made its decision and decree approving and settling the account of said G. A. Coursen, and disapproving and disallowing the account of said William P. Stout, to which said William P. Stout duly excepted; and thereafter, on December 31, 1898, the said decision and decree of said court was filed." It appears from the record that on the 30th of December, 1898, the court overruled the demurrer to the petition for distribution, and "also denied and overruled and disregarded the answer of said Stout to said petition for distribution, to all of which said Wm. P. Stout duly excepted; and thereupon said court made its judgment and decree distributing the estate of said Jeanie A. Coursen, deceased, which said judgment and decree was filed . . . . on the thirty-first day of December, 1898." The decree makes distribution of all the estate—two-sevenths to coexecutor Coursen, husband of testatrix, and one-seventh each to the five surviving children of the second marriage. No distribution was made of the interest of deceased in the estate of her first husband, father of executor Stout, to whom this interest was

bequeathed. The appeal is by executor Stout from the decree allowing the account of executor Coursen, and disallowing the accounts of executor Stout, and from the decree of distribution.

1. In the specifications of errors of law appellant makes the objection that the court was without jurisdiction to make distribution for the reason that the petition for final distribution was not filed with the final account, but was filed afterward, and before the final account was settled. The point was before the court in Re Sheid's Estate, 122 Cal. 528, 55 Pac. 328, and directly decided, and it was held that the court in such case did not acquire jurisdiction. The statutory provisions were fully pointed out in the opinion, and the question clearly elucidated, and the decision must rule this case. Respondents reply that the petition need not be considered under section 1665 of the Code of Civil Procedure, but may be regarded as filed under section 1663 of that code. The latter section relates wholly to partial distribution, and contains provisions with which there was no pretense of complying in the present matter. The petition here was brought under the provisions relating to final distribution, and the decree was for final distribution. Apparently it was just such a case as In re Sheid's Estate. The decree was without authority, and must be reversed.

There are some other questions connected with the decree of distribution which should be noticed. In the will of the testatrix she devises to her son William P. Stout all her right and interest in and to the estate owned by his father, her first husband, at his death. The decree distributes the residue of said estate "hereinafter particularly described" to the second husband of the testatrix and to her surviving children by him, describing the property, "and any other property not now known or discovered, which may belong to the said estate, or in which the said estate may have any interest." There is at least a question whether this provision would not carry any after-discovered property belonging to the testatrix's first husband at his death, and would bind her legatee, Stout, as he is a party to the proceeding. And this doubt is strengthened by the fact that the decree makes no mention of his right to any such property. We think the decree should have made some disposition of this asset of the estate.

It is objected by appellant that under the terms of the will the court could not decree any of the property to the testatrix's surviving husband. This question might have importance if legatee Stout claimed any interest in the property; but, as he makes no claim to any property except that specifically devised to him, and as the other devisees could consent to distribution to their father, as they seem to have done, the decree in this respect was not prejudicial to appellant.

Appellant makes the objection that there could be no distribution of the interest of the deceased children, Grant and Geraldine, in the estate, until after separate administration of their several estates. We see no objection to the decree in this regard. Moreover, appellant, as executor, cannot be heard as to the distribution made: Bates v. Ryberg, 40 Cal. 463. See, also, In re Welch's Estate, 106 Cal. 427, 39 Pac. 805, where certain limitations of the rule are pointed out, within which appellant does not bring himself. As legatee he is not aggrieved, because he makes no claim to any share of the deceased children's property.

2. All the legatees, except appellant, filed written consent to the approval of the account as rendered by executor Coursen. In appellant's account, which is verified, he states that the only money left by deceased, to wit, $180, was taken possession of by his coexecutor, "and by him used in paying necessary expenses incurred during the administration of the affairs and business of said estate." All parties agreeing that the money was properly expended, and executor Stout not being interested as a legatee of and making no claim on the money, there was no error prejudicial to appellant in allowing the account without vouchers. Appellant was secured for any commissions to be allowed him and for attorneys' fees by the real property to be distributed, and petitioners offered in their petition to pay all commissions and charges.

3. Appellant's account consisted of sundry charges for moneys alleged to have been paid out by him for taxes on the real property of the estate and for improving the street in front of the property, aggregating $956.32. He produced certain tax receipts, showing that the taxes had been paid to and received by the tax collector; but they do not show on their face who paid the money. Appellant testified that he

paid a considerable portion of it. There is evidence contradictory of his testimony, however, and on the question of payment by him the evidence is conflicting. From the testimony in the case the court was warranted in disallowing appellant's claim for the disbursements alleged in his account.

4. The court allowed one-half the commissions to appellant on the basis of $20,000 as the value of the estate accounted for by executor Stout, being one-half of $920, and the court also allowed to executor Scott $50 as attorneys' fees. It is claimed by appellant that he should have been allowed extra compensation for services as executor, and also should have been allowed a larger attorney's fee. We can discover no grounds for any greater allowance. The real property was in the possession of the family all the time, and during much of which appellant was an inmate of the family, and occupied a room in the dwelling. Appellant claims that the estate was of greater value than $20,000. The inventory returned the value of the estate at $35,180. But a recent reappraisement placed the value of the real property at $18,187.50. There was evidence that the largest offer made for the property was $20,000, and a witness familiar with real estate values in San Francisco placed the value at $20,000. As to the $180, no part of this money ever came into the hands of appellant, or under his control, as coexecutor, nor was it disbursed by him. His coexecutor had it in his possession at the death of Mrs. Coursen, and paid it out for the benefit of the estate. We cannot see that the court erred in excluding it from the amount on which appellant was allowed commissions: Hope v. Jones, 24 Cal. 90. The inventory value of the property is not conclusive in fixing the compensation to the executors: In re Simon's Estate, 43 Cal. 543; In re Fernandez's Estate, 119 Cal. 579, 51 Pac. 851.

5. During the early years of the administration, appellant acted as attorney and coexecutor, but this did not necessarily entitle him to extra compensation. We have examined the evidence bearing on the extra services claimed to have been performed by appellant, and are of the opinion that the court rightly refused additional compensation.

6. Appellant's attorney appeared for appellant in 1898, and the only service performed by him, as shown by the evidence, was in the preparation of appellant's account and attending at its hearing, and in opposing the coexecutor's

account and the petition for distribution. Under the circumstances described, we cannot say the court erred in fixing the attorney's fee at $50.

7. Objection was made to the decree on the alleged ground that the taxes on the property were not paid. It appeared that the executors had procured the taxes to be paid by other persons, who hold tax deeds on some portion of the property, confessedly for the benefit of the owners. The object of the statute (Pol. Code, sec. 3752) in requiring all taxes to be paid before distribution can be made is to protect the revenues of the state. As the tax was in fact paid, it was no objection to distribution that there was an outstanding tax title in the person who paid the taxes. It is advised that the decree settling and allowing the final account of coexecutor Coursen and disallowing the account of coexecutor Stout be affirmed and that the decree of distribution be reversed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the decree settling and allowing the final account of coexecutor Coursen and disallowing the account of coexecutor Stout is affirmed and the decree of distribution is reversed.