74 Ariz. 319 (1952)
248 P.2d 873
In re WARREN'S ESTATE.
INMAN
v.
IRVING.
No. 5566.
Supreme Court of Arizona.
October 7, 1952.
Opinion Modified on Rehearing November 17, 1952.
*320 Byrne & Byrne, of Prescott, for exceptor and appellant.
Crawford & Baker, of Prescott, for the executrix and appellee.
Opinion Modified on Rehearing November 17, 1952. See 249 P.2d 948.
DE CONCINI, Justice.
This is an appeal from decree of distribution and an order approving the final account of the executrix, Violet Irving, of the estate of John Warren, deceased. John Warren died intestate on December 9, 1938, and letters testamentary were issued December 30, 1938 to his widow, the executrix named in his will, now Violet Irving.
John Warren's estate consisted of a community interest in a 5-room house, a store and dwelling situate in Bagdad, Arizona; two warehouses, and the land on which the buildings were situate. He also owned an equity in what is described as the Cutler house in Skull Valley, furniture, shares of stock in a copper company, and a promissory note. The duly-appointed appraisers *321 valued the entire community estate at $11,400. The creditors' claims submitted to and approved by the executrix amounted to $12,000.
The executrix was given permission by the lower court to continue operating the grocery store in Bagdad which her husband had been operating prior to his death. She paid the existing debts from profits realized from the business and with moneys she advanced from her salary as postmistress. She made and filed six accounts from 1938 to 1948 which were duly approved by the lower court, and then filed her final account on September 22, 1948. Prior to the filing of the final account she applied to the court for permission to sell the store. An order was issued granting her the right to sell it. Mrs. Irving, the executrix, sold the store to her son John Warren, Jr., for $16,500, John executing a promissory note to Mrs. Irving for that amount. In the final account the executrix asks for payment to her of wages for the period of December 9, 1938 to December 9, 1944 at $200 per month, and for $300 per month up to September 9, 1948 when the assets of the store were sold to the son.
The trial court made findings that Mrs. Irving had rendered extraordinary services to the estate, in addition to her regular services as executrix. While making no order as to compensation for her regular services as executrix, the trial court directed that Mrs. Irving be compensated for her extraordinary services on the basis of $150 per month, covering the time from her appointment to the date of the filing of her final account, and, in addition, gave her rent-free, the use and occupancy of a part of the premises owned by the estate for living quarters occupied by her during said period. This compensation left no assets in the estate for distribution.
The testator disposed of his interest in the community by giving to his surviving wife, one-half thereof, and the other half to his wife as trustee for appellant, her daughter by a previous marriage, and John Warren, Jr., son of the deceased and Mrs. Irving, executrix and trustee. The will provided that the trust estate should remain intact until the beneficiaries under the trust should each attain his majority.
It should be remembered that the testator appointed Violet Warren Irving executrix of the entire estate and trustee for the shares left to his children. Where trust duties are imposed by the testator upon a testamentary trustee who is also a devisee and legatee as well as an executor under the will, such executor cannot act as trustee until there has been a distribution of the trust estate. Jones v. Broadbent, 21 Idaho 555, 123 P. 476. For a later and more complete discussion of the above problem see also In re Howard's Estate, 108 Utah 294, 159 P.2d 586. In the instant case the executrix at no time acted as trustee or if she did it was without authority in law.
The decree of distribution was finally rendered June 29, 1951, giving the executrix *322 three-fourths of the estate and one-eighth each to the children of the testator as the will of the testator provided.
The appellant, Aileen Inman, is the daughter of the appellee and the step-daughter of the deceased. At the time of decedent's death she had attained her majority. She now appeals from the final order and decree of distribution of the trial court and assigns eight errors in support of her appeal.
The first assignment of error states that the executrix failed to include in the charges against her, in her accounting of the probate estate, the income received by her as executrix from the business she conducted on behalf of the estate, from the period of her administration until the date of sale to her son, John Jr.
It is well settled (and a citation of authorities is unnecessary) that an executor owes a distinct and binding duty to the devisees and creditors alike to properly account to them through the court concerning the management of the estate. In the case at bar, the store business which was operated by the executrix in the performance of her duties is the most important duty she had to perform. In all, she made seven accountings to the court as to the manner in which she was carrying on the business generally. At no time did her accounts distinctly set forth the exact income received from the business. With such accounting it was impossible to see how much money she had expended for various sundry items. Bancroft, Vol. III, 2d Edition, p. 1677, says however:
"* * * There can be no presumption of negligence or wrongdoing; the presumption is rather to the contrary, that an executor or administrator acted regularly and duly performed the duties of his trusts, unless irregularity and neglect appear on the very face of his accounts. Mere proof of neglect in accounting does not raise an inference of wilful neglect and misfeasance for the entire period of administration."
The only record before this court, other than the accounts and statement of facts, is a transcript of the testimony of Mrs. Warren on May 9, 1950. She satisfied the trial court when she testified that all moneys received in the operation of the store business were kept in the store account and used to pay the estate debts and carry on the business.
Appellant's second and third assignments of error state that the executrix failed to show in her final account what happened to moneys on hand and accounts receivable from the rendering of her fifth account to the filing of the final account. In the fifth account of the executrix she reports cash on hand at the end of the year 1945 as being $8,000, and accounts receivable in the approximate sum of $5,000. The sixth account shows $5,000 on hand and the accounts receivable in good condition. The final account shows the balance of money in *323 the bank at $3,778.70 and no accounts receivable are mentioned. Appellant contends that the difference of about $9,000 from the rendering of the fifth account up to and including the final account on both these items is a marked discrepancy and that the difference should have been explained by the appellee. Appellee on the other hand contends that the moneys were used in operating the business and that of necessity the amount of cash on hand and accounts receivable will vary from year to year. It must be noted that there is a lapse of about three years from the time the fifth account was filed and the final account was approved. No allegation or proof of fraud was made in this case. We are not unmindful of the well-settled rule that the executrix in rendering an account should make a proper account of funds which come into her hands. In re Schuster's Estate, 35 Ariz. 457, 281 P. 38, 43, this court said:
"It is also the rule on appeal that we will assume the trial court found every fact necessary to support its orders and judgment, and that every conflict in the testimony will be resolved in favor of such findings, actual or presumed." (Citing cases.)
The above-quoted rule is well settled in this and many other jurisdictions and we see no reason to deviate from it, for to do so would be to put ourselves in the position of the trier of the fact. There is no record on appeal on this point other than the accounts themselves, and we think that the trial court could have properly found that the appellee's contention was correct and that the moneys used in that three-year period were for the benefit of the estate by improving and preserving the store property and business, paying debts, etc.
Appellant's fourth assignment of error will be treated with assignments 7 and 8.
Appellant's fifth assignment of error is predicated on the proposition of law that when creditors' claims are not presented within the time fixed by statute, and the executor pays such claims, such executor should be surcharged with the amount of the unauthorized payment. Section 38-1003, A.C.A. 1939, provides that all claims must be presented within ten months or are forever barred. Appellant makes the assertion that the claims were not presented within the statutory period. In a statement of facts approved by the trial judge the record reads that the claims against the estate were presented "shortly after the death and long before ten months". The lower court approved the accounts of the executrix which included payment of creditors' claims all in due course of administration. Appellant's point is not well taken.
Assignment number 6 questions the trial court's approval of executrix' final account when such account did not contain any charge against her for accounts receivable of the admitted value of $3,000. The executrix, relative to these accounts, testified in answer to the following question asked her by the trial judge:

*324 "Q. This may clear up the matter. Isn't it a fact that all of the moneys you did receive out of those accounts receivable went into the business that you accounted for? A. Absolutely."
The testimony shows that the trial court was convinced that all accounts collected and all receipts were put into the store account. It must be remembered that the executrix had authority to carry on the store business, which authority was conferred upon her by an order of court. In Hinson v. Williamson, 74 Ala. 180, the Alabama court faced with the same problem said:
"The power to keep the estate together carries with it the incidental authority of employing all ordinary means, which may be necessary and proper to carry out such express power."
In carrying on the business, which appellee was empowered to do by the court, she deemed it advisable to put all moneys received from accounts receivable in the store account. The lower court was satisfied with her accounting for these moneys in that manner and accordingly appellant's exception was denied.
Appellant's fourth assignment is as follows:
"Error was committed by the trial court in failing to penalize the executrix in the matter of the amount allowed her as commissions because of her failure to support any of her accounts with vouchers as required by law."
Assignments 7 and 8 are that the court erred in allowing compensation for extraordinary services, (1) that no such services were rendered, (2) that such allowance was unreasonable and exorbitant.
As to assignment number 4, Section 38-1309, A.C.A. 1939, provides that an executor must support his accounts with vouchers. See Downing v. Skluzacek, 61 Ariz. 322, 149 P.2d 680. In re Schuster's Estate, supra, the nonproduction of vouchers was excused because they were destroyed by fire; and in Stapley v. Stapley, 29 Ariz. 487, 242 P. 1005, 1008, we said:
"The final allegations are that no claims were filed, allowed, or approved against the estate, and no proper checks, receipts, or vouchers produced by the administrator. We do not think that this is a proper allegation of fraud, entitling the parties to have an account reopened. These facts, if true, must have appeared to the court at the time the account was presented, and, notwithstanding, it was approved. Under paragraph 883, R.S.A. 1913, Civil Code, the court is authorized to approve the payment of claims made without the formal proof, in case it is satisfied in regard thereto, and under paragraph 1006, Id., if, for any good reason, a voucher is not produced, the court may allow the item upon proper evidence. *325 We must presume from the fact that the account was allowed that the court was satisfied with the omission of formal claims and vouchers, and it is not alleged that any fraud was intended or damage resulted to the estate by the omissions."
Section 38-1309 supra, of our code, is taken from California. Cal.Civil Procedure, § 1631; 12 Cal.Jur., paragraph 811, p. 39, says:

"Allowance without vouchers. When all parties agree that money has been properly expended by the executor or administrator there is no error in allowing his account without vouchers."
In re Estate of Coursen, 6 Cal. Unrep. 756, 65 P. 965; Strudthoff v. Yates, 28 Cal.2d 602, 170 P.2d 873. In this case no allegation of fraud is made and neither is one implied. The following colloquy took place between counsel and the court at the close of the hearing. Mr. Byrne for the appellant and Mr. Baker for the appellee:
"Mr. Baker: "We tell the court if there has been any fraud or any concealment we want to make it square."
Mr. Byrne: "There isn't the slightest intimation of that."
Mr. Baker: "If the accounts have been bungled, it is my fault. I said the store accounts were always available. If we brought them in and put them in court it would cost a lot of money."
Mr. Byrne: "I am not asking for them at all."
The Court: "We'll stand at recess."
Thus it can be seen that there wasn't the slightest intimation of fraud. Furthermore, when Mr. Baker said the store accounts were available, Mr. Byrne said he wasn't "asking for them at all." Also, the executrix's accountings stated that the store accounts were so voluminous that it would be impracticable to bring them into court but were available for examination to any interested party.
There is no assertion that the money wasn't expended but rather that because there were no vouchers the executrix should be penalized by taking away her compensation for extraordinary services. We see no merit to this point nor has counsel for appellant cited any authority for such reasoning.
Appellant lays great stress on her seventh and eighth assignments of error, which assail the lower court's judgment in awarding appellee $150 per month for the entire period of her administration. Appellant contends that such a sum, which totals $17,169 for the period of administration, is exorbitant and excessive. Appellee on the other hand cites In re Merritt's Estate, 98 Cal. App.2d 70, 219 P.2d 40, for the proposition that the court can, and has the power to, allow the executrix the whole estate for her services. However, that case is distinguishable from the case at bar. In the *326 Merritt case the estate was insolvent. The residue was divided equally between the executrix and the attorney for the executrix, as their fees, in spite of the fact that there was over $1,000,000 in unpaid claims of general creditors. Such is not the case here.
In 1938 the present estate was insolvent. Due to the appellee's foresight and labors for some ten years it became solvent. Upon the hearing of the final account the probate court issued an order allowing the executrix the $150 per month for the past ten years as compensation for her labors. This allowance by the court places the trust beneficiaries in the same position they were in 1939; that is, there are no assets left to be distributed to the trustee for the benefit of the cestuis. Appellee argues that her hard work in taking charge of her deceased husband's business and preserving the estate for those ten years, justified the court in giving her compensation for extraordinary services. During that period, however, she was not charged for rent or for living expenses taken from the store account.
In Byrd v. Phoenix Savings Bank & Trust Co., 62 Ariz. 474, 158 P.2d 657, 658, this court said, in construing the last sentence of Section 38-1404, A.C.A. 1939, relating to compensation for extraordinary services to executors, that it is a matter of discretion for the probate court and it is not to be interfered with except for an abuse of discretion. In the Byrd case we said:
"The matter for this court to determine on appeal is the correctness of the court's order and judgment allowing the fees for the extraordinary services mentioned. It is not the amount of extra fees allowed objected to, but the propriety of the court making such allowances. (Italics ours.)
In the instant case it is the amount objected to, that is the basis for the assignment of error. We agree with the conclusion of the court in the Byrd case but that case is distinguishable from the instant case. The court should not allow an entirely solvent estate to be exhausted under the guise of extraordinary services. To do so would deprive the cestuis of their share under this small trust as provided by the will.
Appellee was left one-half of her husband's share of the community estate, and together with her interest of one-half made her a three-fourths owner of the entire estate. It is true that the executrix, by her ten years' work, actually aided her own interest to a greater extent than the interest of the appellant and John Warren, Jr. It was more beneficial to her to see that the estate became solvent than to relinquish it to creditors in 1938. Although her management of the estate and care of her children is commendable, in that she finally breathed life into an insolvent estate, she should not now be allowed to deprive the cestuis of the trust of their proportionate share according to the provisions in the will. Accordingly, we hold that the trial *327 court's allowance of $150 per month to the executrix for a period of nearly ten years was an abuse of discretion under the facts and circumstances of this particular case.
The executrix' final account should be amended as follows:

1. Value of Ford truck and
 Chrysler Sedan as per
 court's minute entry of
 Aug. 18, 1950, and decree
 settling final account, June
 29, 1951 ................... $ 1,000.00
 Which would increase the
 total estate to the amount
 of ......................... 21,278.70

That portion of the decree settling final account dated June 29, 1951, which allowed the executrix $150 per month as extra compensation for services rendered from December 9, 1938 to September 9, 1948, be set aside.

The expenditures of the final
 account will then total .......... $ 5,960.01
Leaving an estate of the net value
 of ............................... 15,318.69

The remaining estate should then be distributed as follows:

1. 1/2 community property belongs
 to executrix ............. $ 7,659.35
2. 1/4 by will to executrix ....... 3,829.67
3. 1/8 by will to John Warren,
 Jr ....................... 1,914.84
4. 1/8 by will to appellant Aileen
 Inman .................... 1,914.84
 ___________
 Total .................... $ 15,318.69

Appellee's cross-assignment or error was conditioned upon this court finding the compensation granted her by the lower court was error. In view of our conclusion on that score we must answer this cross-assignment.
Appellee urges now that the lower court erred when it refused to make an assignment of the whole estate to appellee, the widow. Appellee relies on Section 38-905, A.C.A. 1939, in support of this assignment of error, the material parts of which are as follows:
"If, upon the return of the inventory, it shall appear therefrom that the value of the whole estate, exclusive of the amount of liens and the one-half interest of the surviving spouse in the community property does not exceed the sum of two thousand dollars ($2,000), and if there be a surviving spouse or minor children of the deceased, the court shall, by order, require all persons interested to appear on a day fixed, to show cause why the whole of said estate should not be assigned for the use and support of the family of the deceased. * * *"
We think appellee's cross-assignment of error to be without merit because the value of the estate was more than $2,000. Since we reversed the trial court's award of $150 per month to the appellee for extraordinary services and allowed her only $600 as shown by her final account, the estate is over the value of $2,000, excluding *328 appellee's half interest and liens, and therefore cannot be set aside to her under the statute.
Judgment affirmed as modified. Costs to appellant.
UDALL, C.J., and STANFORD, PHELPS and LA PRADE, JJ., concur.