[Civil No. 2993.  Filed September 17, 1931.]

[2 Pac. (2d) 1045.]

In the Matter of the Estate of AUSTIN BYRON DUNLAP, Deceased.  MAUD DUNLAP SHELLABARGER, Appellant, v. PHOENIX SAVINGS BANK & TRUST COMPANY, a Corporation, and CLARENCE A. JEMISON, Trustees, Appellees.

Messrs. Sloan, Holton, McKesson & Scott, Mr. Charles C. Le Forgee and Mr. Thos. W. Samuels, for Appellant.

Messrs. Chalmers, Fennemore & Nairn and Mr. Henry W. Allen, for Appellees.

ROSS, J.—This is an appeal from an order approving the ninth annual report of the trustees of a testamentary trust created by the will of Austin Byron Dunlap, including a claim for compensation of trustees during that accounting period.

Austin Byron Dunlap, a resident of Phoenix, Arizona, died testate in 1919 leaving an estate of approximately a million dollars, consisting, principally, of high-class listed stocks and United States government bonds. The Phoenix Savings Bank & Trust Company was nominated by the will the executor thereof. The will provided for two testamentary trusts. Into one the executor was directed to pay the sum of $300,000, and there were named as trustees thereof the Fidelity Trust Company, of Kansas City, Missouri, and Clarence A. Jemison, of Glendale, Arizona, the former being designated as custodian of the *corpus*. The will further provided that the balance of the estate, which (exclusive of some real estate in

Oklahoma not yet distributed) amounted to $604,530.50 after deducting the above $300,000, the funeral, and other expenses, should be paid over to the Phoenix Savings Bank & Trust Company and Clarence A. Jemison, in trust, with directions that certain named portions of the net income thereof be paid in monthly installments to certain named beneficiaries and the balance to Maud Dunlap Shellabarger, his daughter. The Phoenix Savings Bank & Trust Company was designated by the will as the custodian of the *corpus* of this trust.

It is the compensation allowed to the trustees for their services in connection with the trust estate here in Arizona, for the period from August 23, 1928, to August 20, 1929, that is involved in this appeal. The trustees claimed and were allowed by the court $5,473.20, apportioned between them 70 per cent. to the Phoenix Savings Bank & Trust Company and 30 per cent. to Jemison. This demand was objected to below by Maud Dunlap Shellabarger, the principal beneficiary, on the ground that it is excessive, unreasonable, and exorbitant, and the same objection is urged here. The court, after hearing evidence in behalf of the trustees, the objector offering no evidence, found therefrom that the charge was reasonable and properly apportioned between the trustees according to the services rendered.

It appears that the trust property at the beginning of the accounting period, August 23, 1928, was valued at $1,090,062.96, of which $458,716.25 were in United States government bonds and the balance in high-class stocks listed on the New York exchange. At the close of the accounting period, August 20, 1929, the estate inventoried $1,222,659.54. The gross income of the trust estate for the accounting period was $46,941.94, and consisted of interest on United States bonds and cash dividends received on stocks owned by the estate. This income, after deducting expenses,

was all paid out during the year in monthly payments to eight beneficiaries located in different parts of the country. The appellant being the principal beneficiary, the will required the trustees to render to her monthly balanced accounts of the estate and also to pay her any balance after deducting other gifts and expenses. Annual fiduciary income reports were made to the United States Revenue Department showing receipts and disbursements. Under the terms of the trust the trustees are authorized to sell at any time they think proper any of the listed stocks belonging to the trust, and when and if they sell any of such stocks they must invest the proceeds in United States government bonds. In 1928 the trustees sold some mining stocks at a profit of some $222,000, which was invested in United States bonds. During the ninth annual accounting period the trustees were called upon by the United States Revenue Department for information concerning said stock sale, with a view of collecting the profit tax, and, because of allowance for depletion of capital, some three or four weeks were consumed in obtaining such needed information.

The directions to the trustees as to their handling of the estate are very simple and not necessarily onerous, although they might be under some circumstances. According to these directions the trustees were to take possession of the estate property, manage and control same. They were to invest and reinvest and keep invested all cash that should come into their possession in income-bearing bonds issued by the United States, and to exercise their discretion in selling the stocks belonging to the estate.

Appellant says the duties thus imposed are largely clerical; that no particular knowledge or skill is necessary in their accomplishment; that anyone could collect the stock dividends and clip the United States bonds, make deposits thereof, and record in proper

books of account the receipts and disbursements and make all necessary reports to the courts, to the government and to the beneficiaries. Much of this work is, indeed, ministerial and probably someone could be obtained for a few hundred dollars a year to do it, but it is conceivable that in handling a million dollar trust estate many complicated and involved questions of fact and law might arise in the course of a year. That none did in this accounting period, except perhaps the income profit tax on the mining stocks sold in 1928, does not lessen the responsibility or constant vigilance required to protect the estate. Similar questions might arise at any time. The testator was not willing that just anybody handle the trust he had created for his child, relatives and others. He, rather, selected a financial institution in whose stability and reliability he had faith. He wanted more than a bookkeeper or someone to clip coupons and receive dividends. The administration of the trust was to extend over a series of years, and he wanted it to be in safe, conservative, and skilful hands. In his will he said: "It is my Will and I direct that whether heretofore expressed or not, my Executor and my Trustees of the two trusts created in this Will, shall, prior to distribution of any amount hereunder, whether principal or income, be entitled to expend reasonable sums for expenses incurred in the administration of either of the trusts as the case may be, and shall be entitled to reasonable compensation for their and each of their services." In two other places he recognizes that the trustees are to be paid compensation.

Section 4083, Revised Code of 1928, provides that the court in which an estate has been administered shall, if the will create a trust, retain jurisdiction after the final distribution for the purpose of the settlement of the accounts under the trust. And the following section, 4084, reads as follows:

"On the accounting the court shall allow the trustee the proper expenses and such compensation for services as the court may adjudge to be just and reasonable, and shall apportion such compensation among the trustees, if more than one, according to the services rendered and may fix a yearly compensation for the trustee to continue as long as the court may judge proper."

Whatever the rule may be in other jurisdictions, the compensation of the trustees of a trust created by will must be just and reasonable. Such is the statutory rule. It is implicit in the above provision that the court having original jurisdiction to hear and settle accounts of such trustees shall first determine from all the facts and circumstances in each and every case what is just and reasonable compensation. The language used to impose that duty is significant. The compensation is what "the court may adjudge to be just and reasonable." There is an evident intent to give more than ordinary sanctity to the discretion of the trial court, but of course that discretion must be exercised to the end that the compensation be just and reasonable. If the allowance is clearly more than just and reasonable compensation, then it is arbitrary and capricious and should not be permitted to stand. But the fact that the allowance is for more than we would have approved does not establish that it is arbitrary, unjust or unreasonable. Someone must fix the compensation, and if there is evidence in the record reasonably tending to support the amount fixed by the one the law requires to fix it, it is the duty of the appellate court to let it stand.

The authorities are fairly in accord as to what should be considered in fixing compensation of trustees when the statute places that duty upon the court, as may be seen from these quotations:

"The elements which determine proper compensation are the amount of risk and responsibility and

the time and labor required of the trustee and actually spent in the performance of his duties. . . . " 2 Perry on Trusts, 7th ed., § 919-a.

"The general rule running through all of the cases is that a trustee should receive a compensation adequate to his care and trouble. Such compensation is proportioned to responsibility incurred and to the labor and care bestowed." 26 R. C. L. 1392, § 258.

"But the ultimate rule to be observed in this state in making allowance for the services of trustees is fair compensation for the services rendered. The size of the estate, the amount of money handled, and the responsibility connected therewith are proper items to be considered; but the basis of compensation is the fair value of the services rendered." *McGee* v. *Newton Burial Park,* (Mo. App.) 290 S. W. 644.

"It [compensation] must be graduated according to the responsibility incurred, the amount of the estate, the nature and extent of the services necessarily performed." *Perkins' Appeal,* 108 Pa. 314, 56 Am. Rep. 208.

"The amount of property in his charge, and the amount of income received from it, are to be taken into account in determining at what rate he shall be compensated for the care and thought and intelligence, as well as the manual service, which are given to the performance of his duties." *Parker et al.* v. *Hill,* 185 Mass. 14, 69 N. E. 336.

It might be possible to keep a record of the time and labor devoted to the management and control of the trust estate, and to approximate therefrom just and reasonable compensation, if those were the only elements to be considered. But there are the risk and responsibility mentioned by the text-writers and courts. These are not so easy of computation in figures. Like pain and suffering in damage cases, the amount allowed for them must of necessity be left largely to the sound discretion of the trier of the facts.

Although, according to the evidence, the trustees here arrived at their compensation by computing a

certain percentage of the *corpus,* claiming that was the practice among trust companies, the court examined into the nature, items, and actual extent of the services rendered and based its conclusion thereon. The court said, after listening to the evidence:

"I am satisfied the charge is a reasonable one. . . . It might be the basis they have used (percentage of *corpus*) . . . isn't one that would be used in every instance . . . but the result arrived at . . . in my opinion is not an excessive amount to be charged for the work they are doing. You cannot expect an estate of this character, over a million dollars in value, to be handled by (for) a small amount."

While proof of customary charges by trustees, such as a percentage of the fund under the control and possession of the trustees or of the income on such fund, has been accepted by the courts as an aid in determining what is just and reasonable compensation, such proof is limited to that purpose. If the compensation when calculated in either of those ways is just and reasonable for the services performed and the responsibility incurred, the method of its determination is immaterial. The following statement demonstrates how unequally and unfairly such a method of computing compensation may work and at the same time gives the correct rule:

"There is no rate of percentage fixed by law as compensation for a trustee. Frequently compensation is determined by allowing a percentage of the fund under the control or in the possession of the trustee but this rule is not universally adopted in ascertaining a trustee's commission. As suggested by Chief Justice GIBSON, in many cases a gross sum is awarded, and that, as he says, is in some respects preferable, as it leads to an inquiry disclosing the extent of the services rendered by the trustee which greatly assists the court in fixing the true compensation due him. A very small percentage which might seem reasonable compensation might result in a very

large sum in gross which would suggest a compensation entirely beyond what was adequate and fair to the trustee; while, on the other hand, a large percentage which apparently would be excessive compensation might result in a small sum in gross which would at once disclose inadequacy and unfairness of compensation for the trustee. The safer rule, therefore, to be adopted and followed in remunerating a trustee for his services is the simple one that he be compensated for the services performed and the liability incurred." *In re Harrison's Estate,* 217 Pa. 207, 66 Atl. 354.

Our statute allowing compensation to trustees of a testamentary trust seems to have been lifted bodily from California's statute. In *Re Prescott's Estate,* 179 Cal. 192, 175 Pac. 895, the trustee complained of inadequacy of the compensation allowed. The court said:

"The only question is whether an allowance of $200 for 14 months' service in the management and control of this trust estate is so inadequate as to justify the interference of an appellate court. The compensation of the trustee is confided to the discretion of the trial court. Code Civ. Proc., § 1700."

In *Re Duffill's Estate,* 188 Cal. 536, 206 Pac. 42, the complaint was that too much compensation was allowed the trustee, and the court there said:

"The next contention of the appellant is that the allowance of $3,449.72 to the trustee for its services from September 8, 1919, to January 22, 1920, both dates inclusive, a period of 4 months and 14 days, was excessive and unreasonable. Our Code directs that the trustee shall be allowed 'such compensation for services as the court may adjudge to be just and reasonable' (Code Civ. Proc., § 1700), which in effect leaves the fixing of the amount thereof to the judicial discretion of the court, to be exercised, not arbitrarily, but always with due and proper consideration of the nature and extent of the services actually rendered."

In the very recent case of *In re Willard's Estate,* 107 Cal. App. 692, 290 Pac. 897, it was held the court did not abuse its discretion in fixing the trustee's compensation at $2,500 when the estate aggregated $340,000 with an annual income of $27,000, following the reasoning of the court in the Duffill Estate case.

We are satisfied that the court did not abuse its discretion in approving the claim of the trustees for compensation for the ninth annual accounting period under the facts and circumstances as they appear of record, and the judgment is affirmed.

Section 4084, Revised Code of 1928, *supra,* provides that the court shall apportion the compensation among the trustees according to the services rendered by them respectively. In accordance with this provision, the court apportioned the compensation 70 per cent. to the Phoenix Savings Bank & Trust Company and 30 per cent. to Jemison. Appellant contends there was no competent evidence of any fair and reasonable value of the respective services performed by the trustees. We think, however, this is a question in which the appellant is not interested. If either of the trustees was complaining, it would be different. They seem to be satisfied with the apportionment made. If the total of the allowance is just and reasonable, the beneficiary cannot complain as to how it is apportioned between the trustees.

McALISTER, C. J., and LOCKWOOD, J., concur.