464 P.2d 634

In the Matter of the ESTATE of Mary Greene WISWALL, aka Mary G. Wiswall, Deceased.

Eva Greene DAY and Florence Greene Sharp, Appellants,

v.

George A. WISWALL, Executor of the Estate of Mary Greene Wiswall, aka Mary G. Wiswall, deceased, Charles Harrison Greene, C. Kirk Greene, Anita Greene, Special Administratrix of the Estate of William Cornell Greene, Peter Sturdivant, and Tallentyre Sturdivant, Appellees.

No. 2 CA–CIV 646.

Court of Appeals of Arizona.
Division 2.

Jan. 28, 1970.

Rehearing Denied April 1, 1970.

Review Denied April 28, 1970.

Fennemore, Craig, von Ammon & Udall, by John J. O'Connor, III, Robert P. Robinson and Michael Preston Green, Phoenix, DeConcini & McDonald, by J. Wm. Brammer, Jr., and John R. McDonald, Tucson, for appellants.

Gentry, McNulty, Toci & Borowiec, by James F. McNulty, Jr., and Philip E. Toci, Bisbee, Favour & Quail, by Keith F. Quail

and John M. Favour, Prescott, Polley & Talmadge, by Wesley E. Polley, Bisbee, for appellees.

**HOWARD, Chief Judge.**

This appeal challenges an order approving the fifteenth and final accounting and directing distribution in the Estate of Mary Greene Wiswall, which has been plagued by disharmony and litigation since its inception.

There are two appellants, and they appeal on entirely different grounds. The appellant Florence Green Sharp challenges a number of disbursements made from the estate to persons who made claims for fees and expenses at the final accounting. It is necessary to consider her appeal at some length. The appellant Eva Greene Day appeals from denial of her motion to sequester estate assets prior to ordering final distribution. We can and will first briefly dispose of this latter appeal.

Eva Greene Day moved in the probate court, in reliance upon A.R.S. § 14–690, Subdivision A,[1] to sequester one-seventh of the assets of the state to abide the outcome of a civil action filed by her in the superior court to enforce a judgment rendered in the State of California in her favor and against several persons officially and beneficially interested in the estate. The judgment, which found and decreed enforcement of an agreement on the part of the decedent to make a will disposing of a certain portion of her property to Eva Greene Day, was affirmed by the Supreme Court of California in Day v. Greene, 59 Cal.2d 404, 29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802 (1963).

▮ Eva Greene Day's contention is without merit in view of our opinion released this day in the case of Day & Wiswall, 11 Ariz.App. 306, 464 P.2d 626, wherein we held that the court in California had no jurisdiction over the Arizona executors, but only over the individual beneficiaries.

There is therefore no "claim" against the estate and no right to sequester assets.

We proceed to the appeal of Florence Greene Sharp, hereinafter called appellant. By the will, admitted to probate in the lower court, the residue of decedent's estate was divided into six equal portions, one with respect to each surviving natural child. Three children, Frank Townsend Greene, Clarence Kirk Greene, and Charles Harrison Greene each received a one-sixth portion outright. Life income trusts of the three remaining one-sixth portions were established in favor of appellant, Mary Virginia Greene Sturdivant, and William Cornell Greene (and certain other persons bearing a relationship to him), with the remainders of each trust to be distributed at the death of the life beneficiaries to the children of each.

Decedent left extensive property, which became the subject of administration proceedings in Mexico, Arizona and California. The domiciliary administration was in Mexico but the importance of the Arizona administration was enhanced by the fact that the will was invalid in Mexico, and by the fact that a great deal of decedent's property or at least some incidents of its ownership were located here. Four persons were named in the will to act as both co-executors and trustees of the three testamentary trusts. They were an attorney now deceased, Clarence Kirk Greene, Charles Harrison Greene, and George A. Wiswall, a stepson of decedent. Clarence Kirk Greene and Charles Harrison Greene served as executor and co-executor for relatively brief periods in the early years of the Arizona estate. George A. Wiswall served as sole executor thereafter. At the time of notice of settlement of the final accounting, all four designated testamentary trustees had indicated formally or informally that they would not accept the office of trustee, and the petition for settlement referred to

---

1. This statute provides: "If there is a claim against the estate which is not due, or if there is a disputed or contingent claim against the estate, the amount thereof, or the part thereof as the holder would be entitled to if the claim were due, established or made absolute, shall be paid into court * * *."

the necessity of nominating a suitable substitute.

All dates hereinafter set forth are in 1968, unless otherwise indicated. On July 2, the attorneys for the executor filed the executor's "FIFTEENTH AND FINAL ACCOUNTING AND PETITION FOR DISTRIBUTION," listing estate assets at slightly over $2,000,000.00 as of June 30. At the same time, claims were filed by both the executor and his attorneys for compensation for extraordinary services. The executor claimed compensation for extraordinary services in the amount of $46,601.50 over and above the amount of $106,595.00 claimed as the statutory executor's fee.[2] The attorneys claimed compensation for extraordinary services in the amount of $83,226.-50 over and above a similar sum of $106,-595.00.

Settlement of the accounting was set for hearing on July 15. A copy of the accounting and petition and notice of hearing on settlement were mailed to appellant. On the date set for hearing, the court on its own motion continued the matter until July 30. The pertinent minute entry also provided that:

> "Counsel will have until 5 p.m. July 25, 1968, for filing and serving counsel with any and all objections to said accounting and any matters to be presented to the Court at this hearing." (Emphasis added.)

At the bottom of this minute entry there is an inscription indicating that a copy of it was sent (or was intended to be sent) to several persons, including appellant. There is no suggestion from appellant or anyone else that copies were not so sent, or that a copy was not received by appellant.

On July 24, appellant, reciting that she was "appearing in propria persona," filed her "OBJECTION TO FIFTEENTH AND FINAL ACCOUNTING AND PETITION FOR EXTRAORDINARY FEES," in which she objected to the inclusion of certain "Mexican assets" in the Arizona estate, and also to the requests for extraordinary compensation, on the ground that there was no adequate breakdown of extraordinary as opposed to ordinary services, or services which were merely duplicative of services performed by attorneys for various individual beneficiaries of the estate.

On the same date, July 24, appellant also filed a "MOTION FOR CONTINUANCE TO PROVIDE TIME FOR DEPOSITION AND/OR WRITTEN INTERROGATORIES." By this motion appellant sought a continuance of the hearing for a period of ninety days from July 30, on the grounds that her attorney in all matters affecting the estate for the preceding ten years had died on June 3; that she had been unable to find other counsel to represent her; and that the time prior to hearing was insufficient to allow any counsel to represent her adequately.

Appellant filed no notice of hearing on her motion. By minute entry on July 24, the court ordered on its own motion that the motion for continuance be set for hearing on July 29, at 10 a. m. An inscription at the bottom of this minute entry indicates that copies of it, also, were sent (or intended to be sent) to various persons, including appellant. There is no suggestion by appellant that a copy was not sent to or received by her.

In the meantime, on July 23, Charles Harrison Greene filed and served on all pertinently interested parties, including appellant, a petition for allowance of an executor's fee for services in the amount of $33,000.00 or $25,000.00 over the $8,-000.00 which had previously been allowed to him during his tenure in office. A second claim was made for allowance of attorneys' fees and related expenses incurred by him in connection with the litigation prosecuted in California by Eva Greene Day. This second petition stated Charles Harrison Greene's expenditures to have been $142,000.00 and asked that he be allowed a reasonable reimbursement based

---

2. See A.R.S. § 14–662.

upon his status as executor or co-executor in both Arizona and California and as testamentary trustee. Charles Harrison Greene also filed objections to the final accounting, some of which were on grounds similar to those advanced by appellant.

On July 29, the executor filed an objection to appellant's motion for continuance. There is no indication that appellant was present at the time set by the trial judge for hearing on the motion. A minute entry was entered on the same day denying her motion.

On July 30, the date set for the continued hearing, counsel for William Cornell Greene and Mary Virginia Greene Sturdivant filed various objections to the accounting and petition for distribution. The hearing commenced with all interested parties[3] present in person or by counsel with the exception of appellant and Frank Townsend Greene, who had filed no objections or petitions of any kind. The record indicates that on the following day, July 31, appellant was in Pasadena, California, with one of her children who was in a hospital. At the hearing, Charles Harrison Greene announced, contrary to previous indication, that he would serve in his will-designated capacity as trustee of the three testamentary trusts.

After some argument and the taking of some testimony, the hearing was continued to the following day, July 31. On that day, William Cornell Greene filed a petition for reimbursement of a claim against the estate in the amount of $28,000.00. Clarence Kirk Greene also filed a petition, claiming reimbursement for $18,000.00 in expenses incurred during his executorship. The current executor also filed an additional petition to amend the accounting by increasing the appraised value of two of the "Mexican assets" from a little over $130,000.00 to $2,000,000.00.

After an initial period of argument on various matters, the contested nature of the proceedings ended when all parties present announced that they were prepared to enter into a stipulation settling all the claims and matters before the court and approving the accounting and petition for distribution. By this stipulation, signed by all parties present and eventually also approved by Frank Townsend Greene, the claims for compensation of the executor George A. Wiswall and his attorneys were allowed in full; Charles Harrison Greene received, in accordance with an amended petition filed by him, reimbursement for executor's expenses (rather than a fee for services) in the amount of $18,000.00 and also reimbursement to the extent of $45,000.00 for legal expenses incurred in the Eva Greene Day litigation, $15,000.00 of which was charged against appellant's trust; and the claims of both William Cornell Greene and Clarence Kirk Greene were allowed in full. Charles Harrison Greene executed the stipulation both in his individual capacity and as trustee of the testamentary trusts. The stipulation provided "That the Court may enter an order on this stipulation."

A minute entry was entered the same day approving the stipulation, and stating:

"IT IS ORDERED: that said stipulation dated July 31, 1968 is hereby ratified, affirmed and adopted by the court and the rights of the parties shall be as set forth in such stipulation."

A formal written order was entered on September 12. The order incorporated verbatim the terms of the stipulation, and in reference to the objections filed by appellant, stated:

"* * * and it further appearing to the Court that said stipulation has been signed by Charles Harrison Greene, individually, and as Trustee of the Mary Virginia Greene Sturdivant, William

---

3. We refer only to the six natural children of decedent or their representatives who are interested in this appeal. Those interested in the remainder of the trust to be established for appellant during her life were not represented, but there is no appeal before us in their behalf.

Cornell Greene and Florence Greene Sharp Trusts, and that the signature of said Charles Harrison Greene, in his capacity as Trustee of the Trusts of Florence Greene Sharp is binding upon the interests of the beneficiaries of said Trust;"

\* \* \* \* \* \*

The order further recited, as a reason for denying appellant's motion for continuance:

" \* \* \* that the beneficial interests of said Florence Greene Sharp [appellant] would be and were adequately protected by the appearance of the Trustee of the Trust of Florence Greene Sharp [appellant], Charles Harrison Greene;"

\* \* \* \* \* \*

Distribution was accomplished pursuant to the terms of the order, and the executor was ordered discharged. This appeal followed.

■ Appellant contends, first, that the trial judge erred in denying her motion for a continuance. In addition, her two basic substantive claims are first, that excessive allowances were made to the various executors and to their attorneys, and to William Cornell Greene,[4] and second, that the trial judge erred in denying petitions filed by her in 1957 and 1967 seeking removal of the "Mexican assets" from the inventory of the Arizona estate. She also contends that there was error in failing to require that the petitions filed with the court at the time of the hearing be served upon her and that time be given for her to make a response, and that the trial court erred in entering its informal order of July 31 and the formal order of September 12 on the basis of the stipula-

tion of July 31 to which she was not a party. The appellees all seek to uphold the disputed acts of the trial judge on various grounds which will be made apparent below.

.

## THE MOTION FOR CONTINUANCE

■ Appellant has failed to convince us that the trial judge's decision denying her motion for a continuance is not sustainable. Cases considering the question of a continuance on account of the death or illness of counsel are collected in an annotation at 67 A.L.R.2d 497. The Arizona authorities are in accord with the general rule that the matter is one which is " \* \* \* largely committed to the informed discretion of the trial judge \* \* \* " (67 A.L.R.2d 499), and the trial judge's ruling will not be disturbed on appeal unless that discretion is shown to have been abused. Arnett v. Peterson, 24 Ariz. 405, 210 P. 683 (1922); Merryman v. Sears, 50 Ariz. 412, 72 P.2d 943 (1937); Daru v. Martin, 89 Ariz. 373, 363 P.2d 61 (1961); Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965).

We find no abuse of discretion here. Appellant's motion spoke in general terms. For all that appears, appellant had immediate knowledge of her Arizona attorney's death on June 3. There is no indication that she did not promptly receive the notice sent to her on or about July 2 of the settlement hearing originally set for July 15, yet she did not file her motion for continuance until July 24. No attempt was made to specify the extent of her efforts to obtain other counsel. As is pointed out by appellees, appellant has previously been represented in some estate

---

4. In stating the "QUESTIONS PRESENTED" in her brief, appellant has referred only to the allowances made to "executors" and their attorneys. William Cornell Greene did not serve as an executor and would not be included in any of the classifications of persons referred to. However, in the argument pertinent to this question, appellant questions the propriety of the $28,000.00 allowance made to William Cornell Greene.

The special administratrix of the Estate of William Cornell Greene filed a reply brief in which she argues the propriety of the allowance to him without any reference to appellant's failure to include the propriety of the allowance within the scope of the stated question on appeal. Under the circumstances, we think any objection possible is waived, and the question of the allowance to William Cornell Greene is before us.

matters by a Los Angeles attorney, and there are indications that this attorney had been involved in some matters concerning the Arizona estate. Appellant did not appear at the hearing set by the court on her motion, and no reason was given at the time for her absence. Under the circumstances, there was a proper basis for denial of the motion.

■ Most of the appellees would, at this point, have us dispose of most if not all of appellant's remaining contentions on the grounds that her interests were represented by Charles Harrison Greene in his capacity as testamentary trustee at the hearing on July 30 and 31, and that she is now precluded by Charles Harrison Greene's execution, in his trustee capacity, of the July 31 stipulation. We are unable to agree with this position.

None of the appellees dispute the proposition that appellant had a legal (equitable) interest as a trust beneficiary which she could herself assert and protect in the probate proceedings. See Johnson v. Superior Court, 68 Ariz. 68, 71, 199 P.2d 827, 828–829 (1948), and In re Estate of Meyer, 241 Cal.App.2d 747, 51 Cal.Rptr. 72 (1966). Appellant availed herself of the right to assert her interest by appearing and filing written exceptions to the accounting, as required by the terms of A.R.S. § 14–665, set forth in the margin.[5]

■ There are two reasons why Charles Harrison Greene could not bind appellant by his execution of the stipulation as trustee, and both bear mentioning. In the first place, the duties of a testamentary trustee do not commence until there has been a distribution of the estate. In

re Warren's Estate, 74 Ariz. 319, 321, 248 P.2d 873, 875 (1952), modified on other grounds, 74 Ariz. 385, 249 P.2d 948 (1952). Such a rule does not mean that the trustee may not have a duty to uphold the trust against a pre-distribution attack upon its validity, see In re Corotto, 125 Cal.App.2d 314, 270 P.2d 498 (1954), but that is not the case here. To the extent that any of the other authorities cited by appellees [6] are contrary to the rule stated in *Warren's Estate,* we do not think they are controlling, at least where, as here, the beneficiary has made herself a party to the particular proceeding in question and has placed her position on the record.

■ But if there should be any doubt on the subject of pre-distribution representation, there is still the question of conflicting interests. Despite a trend favoring trustee representation, in civil actions, a trustee is not permitted to represent a beneficiary where the two have conflicting interests. See Bogert, Trusts and Trustees § 593, at 280–282 (2d ed. 1960). We think that the same rule should apply in an *in rem* proceeding at least where the beneficiary has herself appeared with respect to the particular proceeding in question and set forth her position. Here, Charles Greene had petitioned for an additional executor's fee (amended to seek reimbursement for expenses during executorship), and reimbursement for litigation expenses, with such reimbursement to be chargeable in substantial part against the trust to be established for appellant during her life. By the terms of the stipulation, Charles Greene received a total of $63,000.00 pursuant to his petitions. His

5. "§ 14–665. Contest of acount; filing objections; referee
 A. On the day appointed or any subsequent day to which the hearing is postponed, any person interested in the estate may appear and file exceptions, in writing, to the account, and contest it. All matters, including allowed claims, not passed upon in settlement of a former account or report or on making a decree of sale, may be contested by the heirs for cause shown.

 B. The hearing may be postponed from time to time, and the court may appoint one or more referees to examine the accounts and make report thereon."

6. e. g., Butler v. Butler, 180 Minn. 134, 230 N.W. 575 (1930) ; Moll v. Goedeke, 107 Ind.App. 446, 25 N.E.2d 258 (1940); In re Wellings' Estate, 192 Cal. 506, 221 P. 628, 630 (1923).

personal interests were in obvious conflict with those of appellant, and he could not effectively preclude her by signing the stipulation in his capacity as trustee.

■ But it is urged, additionally, in one manner or another by all of the appellees that appellant is precluded on appeal by reason of her failure to be present at the hearing on July 30 and 31 and to register objections against the questioned disbursements. Appellees rely upon cases [7] which hold that if proper notice is given of a proceeding such as an accounting, it constitutes notice not only of the hearing on the petition and accounting, but of all issues and questions that might arise from objections thereto, both at the noticed time of hearing and at any properly continued hearing. We take note also of the familiar principle that issues not raised in the lower court will not be considered for the first time on appeal. See for the general principle, 34 C.J.S. Executors and Administrators § 927 and 20 Cal.Jur.2d Executors and Administrators § 92; and see also In re Wiswall's Estate, 89 Ariz. 68, 70, 358 P.2d 172 (1960).

The general principles stated are sound, and there is no contention on the part of appellant that proper notice of the hearing was not given. But with the exception of the disbursements made to Charles Harrison Greene, we do not think that the principles relied upon by appellees are effective to bar appellant's remedy on appeal in this particular case.

■ Appellant filed written exceptions with respect to the compensation claimed by George A. Wiswall and the attorneys for the executor. While A.R.S. § 14–665, subsec. A provides that upon the date set for hearing any person interested " * * *

may appear and file exceptions, in writing, to the account, *and contest it"* (emphasis added), we think that filing written exceptions is the essence of the contest, placing the burden on the executor and his attorneys to show justification for the expenses and compensation claimed,[8] and that a personal appearance and an active courtroom contest is not a prerequisite to the right of appeal although the lack of opposing evidence must be weighed against appellant's position. Byrd v. Phoenix Savings Bank & Trust Co., 62 Ariz. 474, 158 P.2d 657 (1945). The phrasing of a correlative statute, A.R.S. § 14–627,[9] lends support to this conclusion.

We do not read Hewins v. Weiler, supra, to the contrary. Bloch v. Bentfield, 1 Ariz. App. 412, 403 P.2d 559 (1965), also cited by appellees, was an *in personam* action, as was Coulas v. Smith, 96 Ariz. 325, 395 P.2d 527 (1964). The distinction is critical. See e. g., In re Levy's Estate, 4 Cal.2d 223, 48 P.2d 675, 676 (1935). It is also noteworthy that in California, the source of our probate code, a person with an interest like appellant's here can obtain appellate review even though he did not appear at all in the lower court. In re Estate of Meyer, supra.

■ It has also been held that in some situations there is a public policy against waiver of objections to the awarding of compensation in probate matters. In re Fulcher's Estate, 234 Cal.App.2d 710, 44 Cal.Rptr. 861, at 866 (1965). See also on the question of the duty of the court and the necessity of objection, In re Estate of Barnhart, 272 Cal.App.2d 863, 77 Cal.Rptr. 753, 757–758 (1969). In the absence of a valid stipulation binding upon all parties in interest, the trial judge sitting in probate was required to consider all of the duly filed exceptions and enter an order for

---

7. Hewins v. Weiler, 44 Ariz. 309, 36 P.2d 799 (1934); Harrison v. Cannon, 122 Mont. 318, 203 P.2d 978, 981 (1949); In re Howard's Estate, 108 Utah 294, 159 P.2d 586, 590 (1945); In re Bell's Estate, 58 Cal.App.2d 333, 136 P.2d 804, 806 (1943).

8. In re O'Reilly's Estate, 27 Ariz. 222, 225, 231 P. 916 (1925).

9. § 14–627, subsec. A provides: "When an account is rendered by an executor or administrator any person interested may appear and, *by objections in writing*, contest the account or any item therein." (Emphasis added.)

allowances based upon the evidence presented.

 It is also contended that appellant is barred on appeal for failing to seek relief in the trial court under Rule 60(c), 16 A.R.S. While Rule 60(c) is applicable to probate matters, In re Hayward's Estate, 63 Ariz. 1, 159 P.2d 307 (1945), there is no question but that the order appealed from is appealable and appellant was not bound to seek Rule 60(c) relief as a pre-condition of her appeal.

With regard to the other claims, we think the previously underscored terms of the July 15 minute entry are critical and decisive. The minute entry provided that counsel would have until a specified time on July 25 to file and serve

"* * * *. *any and all objections* to said accounting and *any matters to be presented* to the Court *at this hearing.*" (Emphasis added.)

The minute entry was, as stated, mailed to appellant, and apparently to counsel for all other parties now before us.

 We do not perceive that the waiver principles relied upon by appellees can be carried to the length of barring appellant on appeal from asserting the wrongful allowance of claims which were not filed with the court until July 31, as were the claims of William Cornell Greene and Clarence Kirk Greene, in the face of the plain terms of the minute entry of July 15. There is no suggestion that the trial judge, who has a measure of discretion in matters of notice on settlement of final accounts, see A.R.S. § 14–664, subsec. B, could not provide a deadline for filing and serving matters to be considered at the hearing.

 Under the terms of the order, appellant could feel secure that her failure to attend the hearing would not result in a waiver by her of the right to object to

new and additional claims not timely filed. By the same token, we think it must be held that appellant has no standing to question the allowances made pursuant to the petitions of Charles Harrison Greene, since they appear to have been duly filed and served, and there is no contention by appellant that they were not. The fact that the amended petition of Charles Harrison Greene filed July 31 sought reimbursement of expenses rather than fees for services does not change our last conclusion, since one of his earlier petitions sought reimbursement for expenses in an amount much larger than the total amount allowed. In so holding with respect to the allowances of Charles Harrison Greene we do not, of course, determine that the allowances were proper, but only that appellant may not challenge them here, having failed to challenge them in the lower court.

We accordingly proceed to a determination of whether the evidence adduced at the hearing justified the allowances made.

### THE EXECUTOR, GEORGE A. WISWALL

 This has not been the run-of-the-mill estate. At the time of the final order the decedent had been dead for nearly thirteen years. There has been a great deal of multifaceted litigation involving substantial sums and claims.[10] There have been estate tax and a variety of other difficult problems, some apparently reaching into the realm of international relations. But the conceded complexity of the estate does not relieve the probate court of the duty of determining fair compensation for the executor and his attorneys, bearing in mind the fundamental principle that after payments of just debts, the basic purpose of administration proceedings is to effect a transmission of the decedent's wealth without unessential diminution. See In re O'Reilly's Estate, *supra.*

10. The attorneys for the executor list fifteen separate Superior Court proceedings, five appeals to the Court of Appeals, five appeals of other proceedings in the Supreme Court, and the Eva Greene Day

litigation in California. Besides litigation, there have been a variety of time-consuming matters of an unusual nature, including estate tax and many other problems.

We pass for now the question of whether the executor should have been granted all of his claim for extraordinary compensation beyond the statutory amount, because the executor in his own testimony called into question the value of one of the major components of the asset base upon which his statutory compensation was calculated. Among the listed assets of the estate as set forth in the final accounting was a 64.82 per cent interest in Ranchos de Cananea, appraised in the accounting at $636,418.60. Ranchos de Cananea was described as a *communidad de bienes* under Mexican law, which was in turn described as having characteristics similar to the entity known as a limited partnership in American law.

Testimony given by the executor on cross-examination indicated that all of the assets (cattle) of Ranchos de Cananea were in Mexico, that none were in Arizona, that there were no stock certificates in existence or in his possession evidencing the ownership interest, that he had nothing of a physical nature to distribute to the estate beneficiaries with respect to Ranchos de Cananea, and that he could not place a value upon the asset.[11]

 The executor's statutory fee is to be determined only on the basis of assets which come into his possession. In re O'Reilly's Estate, supra, and as stated

11. Transcript of Superior Court proceedings, July 30 and 31, 1968, at 148–151.

"Q Now, within that figure did you not include an evaluation for Ranchos de Cananea?

A There was an evaluation assigned to it, yes.

Q Would that have been $630,418.60?

A I don't have that figure at hand now, but it sounded like a similar figure to that.

\* \* \*

Q Can you explain to the Court, sir, if you know, what sort of a legal organization or entity Ranchos de Cananea was or is?

A Well, it was strictly a Mexican type of community of partners in the thing.

Q Do you agree with me, sir, that it's rather close to a limited partnership, as we know them in this country?

A It could resemble that, yes.

Q Do you know anything about what the assets of this entity consisted of?

A Certain of the assets of the Mexican operation.

Q And could you tell the Court what they were, please, sir?

A In the case of Ranchos it was livestock, as I understand it.

Q In Mexico?

A In Mexico.

Q All right. Anything else, sir?

A No. I hesitate to say anything else. There were probably other things in there, but that was the main function and asset of the Ranchos.

Q Now, during your period of administration as executor, sir, have you ever had in your possession any of the assets of this entity?

A No.

Q Have any of the cattle that you just referred to or any other asset of this entity ever been present within the United States, in your knowledge, during your administration of the estate?

A No, not that I know of.

Q Now, sir, when you distribute this estate in the form in which you previously told the Court that you intend to distribute it, what, sir, if anything, in the way of assets of this entity are you going to distribute under the will?

A Well, really, it's a very vague situation. Nothing actually. Perhaps a copy of the charter of the organization that I have received from time to time, but there's really no physical assets to distribute in this situation.

Q Of the assets, there will be no cattle distributed?

A No.

Q There will be no money distributed?

A No.

Q And in summation, there won't be a single item of value, will there, Mr. Wiswall, that you will distribute from this entity to any heir?

A No, unless it's some personal value to the individual heir. I don't know, unless they consider that they are then sole possessor of a certain part of that.

Q Well, as I understood you to say, sir, you have no asset of the entity?

A That's right. It's a very vague situation.

Q And then it has to follow, does it not, that there is no asset of this entity you are going to hand to any heir that has any value?

A I'm not handing anything in a physical way."

in In re Sullivan's Estate, 51 Ariz. 483, 497, 78 P.2d 132, 138 (1938):

> "* * * It is the general rule that statutory administrators' fees should not be based upon the appraised value of the estate, which is only *prima facie* evidence of the real value, but on the real value, when there is evidence thereof."

While the mode of determining compensation is immaterial if the total award is reasonable, In re Dunlap's Estate, 38 Ariz. 525, 532, 2 P.2d 1045 (1931), here the executor was granted all that he asked for as extraordinary compensation. We cannot, therefore, attempt to justify the total allowance on the basis of uncompensated extraordinary services, and a redetermination is necessary.

## ATTORNEYS FOR THE EXECUTORS

▮▮▮▮ The attorneys received an amount equal to and based upon the statutory executor's fee before allowance of any compensation for extraordinary services. A.R.S. § 14–661, subsec. B provides that the attorneys shall be allowed a reasonable fee. "Reasonable" means in proportion to the amount of time, labor and skill given by the attorney to the representative in caring for the decedent's estate. Busenbark v. Smith, 55 Ariz. 1, 4, 97 P.2d 533 (1940). The matter is peculiarly one within the sound discretion of the trial judge, and his determination will not be set aside unless an abuse is shown. *Busenbark*, supra; *O'Reilly's Estate*, supra.

▮▮▮▮ Here, however, we have held that the basis of the executor's statutory fee must be redetermined, and the attorneys received all that they claimed by way of extraordinary services. Appellant has called our attention to Exhibit 3 placed in evidence by the attorneys. Supporting evidence on this subject should be fully and clearly detailed, see *Fulcher's Estate*, supra. We think it sufficient to say that although the evidence presented here is more detailed and helpful than that in *Fulcher's Estate*, we have been unable to find in the exhibit or in the other evi-

dence before us a reasonable basis for the attorneys' aggregate compensation.

## CLARENCE KIRK GREENE

An allowance of $18,000.00 was made to Clarence Kirk Greene, as reimbursement for expenses incurred by him while he was a co-executor of the Mexican, Arizona, and California estates. Clarence Kirk Greene's testimony on the subject was quite brief and general, to the effect that he incurred expenses in excess of the amount claimed in making trips to Mexico, in paying Mexican estate or inheritance taxes, and in defending against the Eva Greene Day litigation in California. While Clarence Kirk Greene testified as a general conclusion that these expenditures helped preserve the value of the Arizona estate assets, no benefit accruing to any specific asset was cited. No vouchers of any kind were presented.

▮▮▮▮ Vouchers for estate expenditures are required by statute. A.R.S. § 14–626. See also A.R.S. § 14–663, subsec. A and 4 Bancroft, Probate Practice § 984 (2d ed. 1950). They may be dispensed with if lost or destroyed. See § 14–626, subsec. B; In re Schuster's Estate, 35 Ariz. 457, 475, 281 P. 38, 45 (1929); and *Warren's Estate*, supra. But their absence should be explained and testimonial detail of the precise expenditures in question and their amount should be required. The need for such detailed evidence is not dispensed with by testimony that expenditures were made which were much larger than those for which reimbursement is claimed. The foregoing principles are particularly applicable where, as here, it is less than clear that the expenditures in question were incurred for the benefit of the estate within this jurisdiction. We do not think, accordingly, that there was a sufficient evidentiary basis for this allowance.

## WILLIAM CORNELL GREENE

The bases of this claim for $28,000.00 are interest expense and attorneys' fees incurred by William Cornell Greene in con-

nection with litigation brought by him against the estate. William Cornell Greene testified that the expenses were incurred in an effort to effectuate a compromise agreement reached with the executor, which the latter repudiated. William Cornell Greene subsequently prevailed in the litigation in the trial court, and an appeal to the Supreme Court was dismissed when the parties ultimately arrived at a settlement of the matter. Although counsel for the special administratrix of William Cornell Greene suggests in his brief that there was an agreement between William Cornell Greene and the executor to reimburse Greene for the expenses in question, there was no such testimony by William Cornell Greene at the hearing in the lower court. It is also interesting to note that the final accounting shows that William Cornell Greene was currently indebted to the estate in the amount of $27,009.86.

▪ It has been held in In re Balke's Estate, 68 Ariz. 373, 380, 206 P.2d 732, 737 (1949), and Pintek v. Superior Court, 81 Ariz. 255, 258, 304 P.2d 392, 394 (1956), that it is beyond the power of the probate court to allow attorneys' fees to attorneys other than those employed by the executor. That which cannot be done directly cannot be done indirectly by allowing reimbursement to one who has paid attorneys to prosecute litigation against the estate. Likewise, we know of no principle, statutory or otherwise, which would permit a litigant against the estate to be reimbursed for interest expense incurred by him in an attempt to effectuate a settlement of the litigation. We are unable to find in the factual refinements suggested by this appellee anything which destroys the controlling nature of the principles of *Balke's Estate* and *Pintek*. We find no proper basis for the allowance, and we are not impressed with the suggestion that the amount in question is *de minimis*.

## THE "MEXICAN ASSETS"

The final matter before us concerns the "Mexican assets," which, collectively, refer to shares of stock in two Mexican corpora-

tions (Compania Ganadera de Cananea, S. A., and Productos de Cananea, S. A.), and to the partnership-type interest in the *communidad de bienes* known as Ranchos de Cananea, referred to above. As stated under the heading "QUESTIONS PRESENTED FOR REVIEW" on page fourteen of appellant's opening brief, the question is:

"V

DID THE TRIAL COURT ERR IN DENYING FLORENCE GREENE SHARP'S PETITIONS FILED APRIL 15, 1957 and MARCH 13, 1967, TO REMOVE 'MEXICAN ASSETS' FROM ACCOUNT- AND INVENTORIES?"

If we were to confine ourselves to the question presented, as we might properly do if the case were not being returned to the lower court, there would be an easy answer, because the time for appeal from the 1957 and 1967 accounts has long since expired. It is not contended otherwise, and it is too late to seek relief in this court with respect to those accounts.

▪ The real issue sought to be raised, however, is the present includability of the assets in question. It is claimed, on the basis of the modifying opinion in In re Warren's Estate, supra, that their includability is *res judicata* by virtue of their inclusion in the earlier interim accountings. We cannot agree. An asset may be properly includable in an estate account at one time and not another. As noted in 4 Bancroft, Probate Practice § 939, at 26–27 (citing In re Bottom's Estate, 156 Cal. 129, 103 P. 849 (1909), the settlement of an intermediate account extends only to money transactions reported, not items which are properly adjudicated only on final judgment. We do not think a *res judicata* effect attaches to inclusion of an asset in an interim account, where inclusion has no significant effect on the rights of the parties, as was the case here. As for the value of assets, value has an inherently fluctuating quality and we think it may

always be called into question by proper evidence.

We accordingly hold that it was open to appellant to challenge the inclusion of Ranchos de Cananea in the fifteenth and final accounting. Even though she did not do so, evidence elicited by another then-objector substantially destroyed both the includability of the asset and its assigned value. Appellant may have the benefit of such evidence in this *in rem* proceeding. It will be open to her to contest inclusion and value upon remand. This court has previously held, in Cordoba v. Wiswall, 7 Ariz.App. 144, 436 P.2d 922 (1968), to which litigation appellant was a party in the lower court, that the executor had the power to administer shares of stock of a Mexican corporation when the shares were physically located in this jurisdiction. Since it appears that the shares of the Mexican corporations in question were in the executor's possession, and there was no evidence presented as to their real as opposed to appraised value, the proper inclusion or value may not now be questioned by appellant.

It is indeed regrettable that this matter must be reversed at this late date. Perhaps the most apt remark that can be made for posterity is that although the law favors family settlement of estates, each interested member of the family must be party to the settlement.

Reversed and remanded for redetermination of the matters indicated herein, consistent with this opinion.

ALICE N. TRUMAN, J., Superior Court Judge, and L. RAY HAIRE, J., Court of Appeals, Division 1, concur.

NOTE: Judges KRUCKER and HATHAWAY having requested that they be relieved from consideration of this matter, Judges TRUMAN and HAIRE were called to sit in their stead and participate in the determination of this decision.