497 P.2d 389

**Ralph B. FEFFER, Jr. and Robert E. Feffer, Appellants,**

**v.**

**Judith B. NEWMAN, individually and as Administratrix with the Will Annexed of the Estate of Ralph B. Feffer, Deceased, Appellee.**

**No. 1 CA–CIV 1563.**

Court of Appeals of Arizona, Division 1,

Department B.

May 23, 1972.

Rehearing Denied June 21, 1972.

Review Denied July 13, 1972.

rulings concerning the amounts allowed to the administratrix as and for her statutory commission and for attorneys' fees; (2) the method utilized by the trial court in apportioning these fees against the specific legacies of the two legatees; and (3) the trial court's refusal to remove the administratrix upon her failure to timely file an accounting as required by Arizona statutes. A further question is also presented concerning the interpretation of the decedent's will relating to the disposition of his real property.

Procedurally, the questions were raised in the trial court when the appellant-legatees (the sons of the decedent) filed an order to show cause directed against the appellee-administratrix (the surviving wife of the decedent) requiring her to show cause why she should not be removed as administratrix for failure to timely file an accounting pursuant to A.R.S. § 14–622. At the same time the sons also filed a petition for determination of heirship so as to resolve claims to the real property subject to probate in the estate. The appellee-administratrix, in addition to responding to the motions, and without filing a detailed final account and report, requested that the court approve certain administrative expenses and enter a decree distributing the assets of the estate. After an evidentiary hearing, the trial court resolved all issues in favor of the administratrix and entered a decree of distribution.

A great part of appellants' brief is devoted to a reargument of factual questions which have been decided by the trial court in favor of the appellee. This court is not a fact finding forum. Where conflicting evidence has been presented to the trial court, we must accept as true that evidence which most strongly supports the judgment entered by the trial court. Therefore, in stating the facts pertinent to the various questions raised, we will not go into the details of evidentiary conflict presented to the trial court, but rather we will merely recite the facts in a light most favorable to supporting the trial court's conclusions.

Engdahl, Jerman, Butler & Estep, by Charles E. Butler, Phoenix, for appellants.

Snell & Wilmer, by Roland R. Kruse, Phoenix, for appellee.

HAIRE, Chief Judge, Division 1.

The principal questions raised on this appeal by two specific legatees under their father's will relate to (1) the trial court's

## THE AMOUNT OF THE ADMINISTRATRIX'S FEE AND THE APPORTIONMENT THEREOF AGAINST APPELLANTS' SPECIFIC LEGACIES

■ The decedent's will had no provisions relating to the appointment or compensation of an executor. Therefore the administratrix was entitled to compensation based upon the schedule set forth in A.R.S. § 14–662.[1] Although the appellants contended that the administratrix had waived her right to a fee and had agreed to serve without compensation, she denied any such agreement and the trial court expressly found in her favor on this question, awarding her statutory compensation in the amount of $12,461.93. This amount was computed based upon an inventory and appraisement which included, among other estate assets, the valuation of the decedent's stock ownership in three corporations and also the one-half interest in community property assets belonging to the administratrix as the surviving spouse.

■■ One of appellants' contentions, relying upon In re O'Reilly's Estate, 27 Ariz. 222, 231 P. 916 (1925) and In re Estate of Wiswall, 11 Ariz.App. 314, 464 P.2d 634 (1970), was that the valuation of this stock should have been excluded before computing the administratrix's fee. We disagree. The decedent's will left all his stock in the three corporations to his two sons. The stock in two of these corporations was the decedent's sole and separate property, and the stock in the other was community property.[2] This stock was rightfully inventoried and appraised as a part of his estate, was subject to probate, and in fact title could only pass to appellants through a decree of distribution upon termination of the probate proceedings. Appellants appear to base their claim that the value of the stock should be excluded upon the fact that through the settlement agreement they were to have full ownership of the stock, that they had possession of the stock certificates, and that the administratrix did not demand possession thereof until it appeared necessary in order to enforce against appellants the provisions of the will assessing against these stock interests a proportionate part of estate taxes and administrative expenses. This initial lack of possession does not mean that the administratrix did nothing insofar as concerns the probate of this stock. The act of presenting the will for probate, filing an inventory and appraisement including the stocks, and the doing of the multitude of routine acts required which would eventually lead to a decree distributing these stock interests to appellants all represent efforts expended by the administratrix in accordance with our statutory scheme so as to "probate" these stock interests along with all other assets of the estate subject to the jurisdiction of the Arizona probate court. The fact situation thus presented can be readily distinguished from O'Reilly, *supra*, where there was an attempt to base the administrator's fee on valuations that did not even constitute assets of the estate, or from Wiswall, *supra*, where the claimed commission was based upon assets which were not only not in the possession of the executor, but in addition were not

---

1. A.R.S. § 14–662 reads as follows:
 "A. When compensation of the executor is provided by will but is renounced by the executor as provided by § 14–661, or if no compensation is provided, the executor shall be allowed commissions on the amount of the whole estate accounted for by him, as follows:
 "1. For the first thousand dollars, seven per cent.
 "2. For all above that amount and not exceeding ten thousand dollars, five per cent.

 "3. For all above that amount four per cent.
 "B. The same commission shall be allowed administrators, and further allowance may be made to administrators or executors as the court deems just and reasonable for extraordinary services."

2. There was originally some conflict as to the nature of the decedent's stock ownership interest, but this conflict was settled by a settlement agreement entered into between the parties subsequent to decedent's death.

even subject to the jurisdiction of the Arizona court. We hold that the stock valuations were properly included in computing the administratrix's statutory fee.

We consider next appellants' contentions concerning the apportionment of the administratrix's fee. A codicil to the decedent's will provided that it was the testator's "intention and desire that any proportionate estate taxes and administrative cost be borne by" the stock interests bequeathed to appellants. Pursuant to this provision, the trial court apportioned part of the administratrix's fee as a charge against appellants. Appellants contend that the apportionment made by the trial court was improper. Appellants point out that while the trial court included the valuation of the survivor's one-half of the community property in the base used for determining the administratrix's fee, it determined appellants' proportionate share of this administrative expense upon a base which *excluded* the survivor's community property interest.[3] This had the effect of substantially increasing appellants' proportionate share of this administrative expense over and above what it would have been if the survivor's community property had been included in the apportionment. The administratrix, without citation of authority, states that the trial court correctly apportioned this administrative expense "in the ratio of net values of benefits distributable to beneficiaries under the will—on the basis of benefits conferred." Applying this standard, the survivor's community property, even when admittedly subject to probate, would never be required to bear any of the expenses of probate, because the survivor's one-half of the community property is never "distributable to beneficiaries under the will" nor is it ever a "benefit conferred" under the will. This result is neither logical nor in accord with prior Arizona decisions and decisions from other community property jurisdictions. In re

Monaghan's Estate, 71 Ariz. 334, 227 P.2d 227 (1951); In re Foreman's Estate, 99 Ariz. 147, 407 P.2d 102 (1965); Nowland v. Vinyard, 43 Ariz. 27, 29 P.2d 139 (1934); In re Coffee's Estate, 19 Cal.2d 248, 120 P.2d 661 (1941); In re Haselbud's Estate, 26 Cal.App.2d 375, 79 P.2d 443 (1938); In re Condos' Estate, 70 Nev. 271, 266 P. 2d 404 (1954). *See also* de Funiak & Vaughn, Principles of Community Property, § 215 at 491 (2d Ed. 1971); 15 Am. Jur.2d Community Property § 102, at 913 (1964).

 If it is essential that the survivor's one-half of the community property be probated, then logically it should bear its proportionate share of *general* administration expenses. The Arizona Supreme Court has indicated that there may be situations where *specific* administration costs are not incurred for the general benefit of the whole community property (whole estate subject to probate), and that under such circumstances no part of such costs should be imposed upon the survivor's one-half of the community property, but rather upon the estate benefitted. See In re Monaghan's Estate, *supra*. It is our opinion, however, that the regular statutory fees for an administrator fall within that class of administrative expenses which are of general benefit to the entire probate estate, and that therefore when the survivor's one-half community property interest is a part of the probate estate it must bear its share of such expense proportioned upon the values involved. Here, the trial court erred in failing to apportion a part of the administratrix's fee against the survivor's one-half of the community property, with the result that appellants were required to bear more than their fair share of the fee. Upon remand the trial court is directed to reapportion this administrative expense in accordance with the foregoing principles.

---

3. No valid contention can be made that the survivor's community property should not have been included in the probate estate. There were over $8,000 in community debts, and other community debt claims were presented and rejected or compromised.

## THE AMOUNT ALLOWED FOR AT- TORNEYS' FEES AND THE APPORTIONMENT THEREOF AGAINST APPELLANTS' SPE- CIFIC LEGACIES

The attorney for the administratrix admitted that at the inception of this probate, he agreed to perform the routine legal services required in probate, excluding the preparation of estate tax returns, for the sum of $5,000. At the time this arrangement was made, the administratrix and the two sons were amicable and there did not appear to be any unusual problems. Unfortunately, because of various conflicts, concerning the nature of the decedent's property, the interpretation of decedent's will and the propriety of the claiming of a fee by the administratrix, this harmony did not last. We have previously referred to a settlement agreement which disposed of some of these problems, notably those relating to the community or separate nature of the decedent's property and the forebearance by the appellee of certain community property ownership claims. However, notwithstanding the settlement agreement, the remaining problems required the expenditure of time by the administratrix's attorney far in excess of that required in a routine probate, and eventually resulted in the trial court's finding that the sum of $12,461.93 was a reasonable sum to be allowed to the administratrix as and for attorneys' fees. This amount is the same as the amount allowed under the statutory fee schedule for the compensation of the administratrix. While there is some contention by the appellant that this amount is unreasonable and that the attorney should be limited to the $5,000 originally agreed upon, it is our opinion based upon the evidence as to the total time expended by the attorney, that the fee was reasonable.

The attorney testified that in April 1969, even though he had prepared the federal estate tax return rather than having it prepared by an accountant, he was still willing to accept $5,000 as his fee.

At that time it appeared that little remained to be done to close the estate. However, also at that time the controversy over the administratrix's fee arose, and, stating the evidence in a light most favorable to sustaining the prevailing party in the trial court, because of this controversy the appellants refused to pay any pro rata share of the administrative expenses or any share of the estate taxes [4]—all contrary to the express provisions of the will. It thus became necessary for the administratrix to sue the appellants in order to obtain possession of the stock certificates so as to be in a position to enforce the provisions of the will which required that these stock legacies bear their proportionate part of the taxes and administrative costs. Appellants' contention that the attorneys' services in obtaining possession of the stock certificates for the administratrix and services subsequent thereto should be charged against the administratrix in her individual capacity is without merit. The fact that she would benefit individually by an apportionment of her fee against appellants' legacies because her distributive share as a beneficiary under the will would be accordingly increased, is not material. In her capacity as administratrix she was charged with the duty of enforcing the apportionment scheme in accordance with the decedent's intentions as expressed in the will, and this duty existed independently of her fortuitous status as a beneficiary under the will. If someone else had actually been the beneficiary of the property bequeathed and devised to the administratrix, her duties as administratrix would have remained the same and she certainly would have been entitled to reimbursement for attorneys' fees incurred in enforcing the terms of the will. We can see no reason for the application of a different rule when the administratrix occupies the dual or even triple role of administratrix, beneficiary under the will, and surviving owner of one-half of the community property estate. We therefore hold that the

---

4. Appellants subsequently agreed to pay their pro rata share of the federal estate taxes.

trial court did not err in awarding the administratrix $12,461.93 as and for attorneys' fees. However, we do hold that the trial court committed error in refusing to apportion any part of this particular administrative expense against the survivor's one-half of the community property. We think that the principles set forth above concerning the apportionment of the administratrix's fee are equally applicable to administration expenses consisting of the regular routine services rendered by the estate attorney.

■■■ Here, without question $5,000 of the attorneys' fees represented compensation for services rendered by him in complying with the general routine probate requirements imposed by law, thus benefitting the survivor's community property and requiring that the survivor's community property bear a proportionate part of that expense. We do have some question about the propriety of requiring that the survivor's community property bear a proportionate share of the remaining $7,461.93 of the attorneys' fees, since these expenses were incurred after the estate was practically in a position to be closed, and could not realistically be construed to have been of any real benefit to the survivor's community property. Upon analysis it appears clear that these services were rendered for the sole benefit of protecting the interests of the estate disposed of under the decedent's will against appellants. For this reason and pursuant to the principles expressed in Monaghan, *supra*, we hold that it would be improper to apportion any part of this $7,461.93 against the survivor's one-half of the community property.

## THE DISPOSITION OF DECEDENT'S REAL PROPERTY

Appellants contend that the decedent died intestate as to his real property. We do not agree. After making provision for distribution of the above-discussed stock interests to appellants, the decedent's will provided as follows:

"The stock I own in the 3 corporations is all that I leave to my sons believing this to be quite adequate because this represents the opportunity of a substation lively hood [sic] for their families."

This provision clearly indicates that the decedent intended that the stock would be the only property appellants would receive from his estate after his death.

In the next paragraph of the will, provision was made for decedent's wife:

"My wife is beyond the age of doing any work other than the housekeeping she chooses to do so my bank acc't my small amount of shares owned by me in various corporations, the automobile owned by us, our household furnishings *and anything else that I personally own shall be given to my wife.*" (Emphasis added).

■■■ Appellants contend that the use of the word "personally" in this paragraph by the testator evidences an intent to bequeath to appellee only his personal property. When the foregoing provisions are considered together with other provisions of the will which speak of property held in corporate form by appellants, it is clear that by using the above-emphasized language the decedent intended that his wife would receive all other property he personally owned and not specifically disposed of by the will, including any real property owned by him. If resort to rules of construction be necessary to support this result, adequate support is found in the rule that when two constructions of a provision in a will are possible, the one favoring testacy will be favored. Newhall v. McGill, 69 Ariz. 259, 212 P.2d 764 (1949); In re Conness' Estate, 73 Ariz. 216, 240 P.2d 176 (1952). We therefore find untenable appellants' contention that the testator intended that his will dispose of personalty only, and affirm the trial court's disposition of this issue.

### THE FAILURE OF THE ADMINIS-
### TRATRIX TO FILE A FULL
### ACCOUNT AND REPORT

 The administratrix was appointed March 26, 1968. On October 20, 1969, pursuant to petitions filed by appellants, the trial court issued its order requiring the administratrix to appear and show cause why she should not be required to "account and report for what has transpired" in the estate and further why her letters of administration should not be revoked.[5] The administratrix responded showing that her failure to close the estate was due to appellants' wrongful failure to relinquish possession of the stock certificates and their refusal to pay their proportionate share of the administration expenses. Insofar as concerns her failure to fully account in a detailed fashion, she responded that since appellants were specific legatees only, their bequest would not be affected by the detailed transactions involved in the estate administration; that only the residuary legatee could be affected and she herself was the residuary legatee; that she had previously tendered to appellants distribution of their specific bequest, conditioned upon their payment of their proportionate share of the above-discussed administration expenses; that the assembling, preparation and filing of an accounting would be costly, time consuming and serve no useful purpose insofar as concerns appellants. After hearing the matter the trial court specifically found that the administratrix had not neglected the administration of the estate and that her failure to

settle and distribute the estate had been justified. Under these circumstances we cannot say that the trial court abused its discretion in refusing to remove the administratrix because of her technical violation of A.R.S. § 14–622.

Inasmuch as we have found that the trial court did commit error in the apportionment of the administrative expenses consisting of the administratrix's fee and the expenses for attorneys' fees, the judgment is reversed and the matter remanded for modification of the judgment in accordance with this opinion.

EUBANK, and JACOBSON, JJ., concur.

---

5. A.R.S. § 14–622 (1971–72) reads as follows:

"The administrator within thirty days after the expiration of the period for filing claims, and the executor within seven months after appointment, and thereafter at any time required by the court, shall render and file in the court a verified account showing all money received and expended by him, all claims presented against the estate, the names of the claimants, and whether such claims have been allowed, and all other matters necessary to show the condition of the affairs of the estate. If he fails to render

any account required by this section or when required by the court, the court shall compel rendition of the account by attachment and any person interested in the estate may apply for and obtain an attachment against the executor or administrator, but no attachment shall issue unless a citation has first been issued, served and returned, requiring the executor or administrator to appear and render it or show cause why an attachment should not issue. If an executor or administrator fails to render an account having been duly cited, his letters may be revoked in the discretion of the court."